7662

LONG v. DUNLAP.

1. WINTHROP COLLEGE under its original charter has the power to purchase and hold real property for the use of the college, and this power is not abridged or repealed by implication by the act, 21 Stat., 369, or the provisions in the supply act of 1906, 22 Stat., 255, 265.

2. CONTRACTS.—THE TRUSTEES OF THE COLLEGE could not contract beyond funds in hand or appropriated or which they expected to receive from donations or bequests, and the Court could decree conditional specific performance of a contract with such funds.

3. IBID.—CONTRACT—OFFICERS.—Here the plaintiff cannot raise the issue of want of mutuality in the contract of purchase of land, as that question could only be raised by the State or the other party to the

contract. The only right of plaintiff is to prevent the trustees of the college from misappropriating public funds.

4. APPEAL.—A point not made before or considered by the Circuit Court will not be considered on appeal, except a question of jurisdiction.

Before ERNEST MOORE, Special Judge, York, January, 1910. Affirmed.

Action by Alex. Long, as Chairman of Board of Trustees of Catawba Military Academy; Iredell Jones, J. M. Cherry and W. B. Wilson, as Trustees of the Rock Hill School District, and in their own rights, against Ira B. Dunlap, as Secretary of Board of Trustees of Catawba Military Academy; A. E. Smith, W. L. Roddey, J. B. Johnson and J. J. Waters, as Trustees of the Rock Hill School District; the Trustees of Winthrop Normal and Industrial College of South Carolina; Rock Hill School District, and Catawba Military Academy. From circuit decree, plaintiffs appeal.

*Messrs. Wilson & Wilson* and *Stanyarne Wilson,* for appellants, cite: *The college has no power or money to make this contract:* Acts 1894, 870; 107 U. S., 155; 120 U. S., 522; 184 U. S., 391; Acts 1891, 1105; Acts 1893, 480; Acts 1896, 265; 23 Ency., 430, 479, 483; 15 Rich., 144; 25 S. C., 538; End. on Int. of Stat., secs. 187, 216; 43 N. Y., 437; 45 S. C., 344; 6 Am. St. R., 847; 48 N. W., 363; 7 Minn., 61; Bish. on Con., secs. 78, 318. *Tax payers may enjoin this purchase:* High on Inj., secs. 1298, 1300, 1269; 54 S. C., 457. *There was no mutuality between parties at inception of contract:* Pom. Spec. Rem., sec. 162; 1 Hill Ch., 57; 43 L. R. A., 202; 2 Md. Ch., 401.

*Messrs. Witherspoon & Spencers, Dunlap & Dunlap* and *J. E. McDonald,* contra. *Messrs. Witherspoon & Spencers* cite: *Power in college is ample:* 20 Stat., 1102; Code, 1902, 1288; 21 Stat., 869, 870; 22 Stat., 250, 265.

August 27, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The trustees of Winthrop Normal and Industrial College, desiring to build and equip a model practice school building in connection with the college, applied to the legislature for an appropriation of $20,000, stating that such a building, properly equipped, would cost $45,000, but that they could raise $25,000 of the amount needed. By an act, approved February 13, 1907, (25 Stat., 831), the sum asked for was appropriated, on condition that the trustees raise $25,000 additional for that purpose. The additional sum was raised and deposited in bank, whereupon, by the terms of the act, the appropriation became available.

Under the terms of the act, the said sum of $45,000 was to be expended in erecting and equipping the building. Therefore, no part of it could be used for purchasing a site. It appears, however, that a friend of the college offered to give $25,000 for this school on condition that the trustees raise $30,000 more—making in all $100,000. It does not appear that any other condition was attached to this offer, such as that the money should be used only in erecting and equipping the building, as was the condition of the appropriation. The trustees of the college reported this offer to the legislature, in 1908, and stated that they expected to raise the additional sum of $30,000. It appeared, however, that at the time of the trial before the referee, they had not succeeded in doing so.

As there was no suitable place on the college property for the location of the practice school, negotiations were commenced with the Rock Hill school district for the purchase of a lot of eight acres, lying near the college, which had been conveyed to the school district by the Catawba Military Academy. The negotiations resulted in an agreement between the trustees of the college and the trustees of the school district for the sale of the property to the college

for $20,000, cash.   The trustees of the school district—seven in number—were sharply divided as to the wisdom and expediency of selling the property,—four being in favor of it, and three opposed to it.

To prevent the consummation of this agreement, this action was brought by the minority of the trustees of the school district, as such and in their own right as citizens and tax payers, with whom Alex. Long, as chairman of the board of trustees of the Catawba Military Academy, and as a citizen and tax payer, was joined as a plaintiff, against the majority of the trustees of the school district, the trustees of the college, as a corporation, the school district, as a corporation, the Catawba Military Academy, as a corporation, and Ira B. Dunlap, as secretary of the board of trustees of the Catawba Military Academy, to reform the deed of the Catawba Military Academy to the trustees of the school district, and to enjoin the sale of the property to the college.

Reformation of the deed was prayed for on the allegation that it should have contained a covenant, running with the land that it should never be sold, but should be held by the grantees, in perpetual succession for the purpose of conducting a high school thereon.

The cause of action for reformation was abandoned on circuit, and the facts are mentioned merely to explain the presence of some of the parties to the action.

Injunction against the sale by the school district was prayed for on the allegations that the price agreed upon was grossly inadequate, and that the sale of the property, under the circumstances alleged, was an abuse of discretion so gross as to amount to a breach of trust; and against the college, injunction was prayed for on the allegation that there was no necessity for the acquisition of the property by it, and that it was without power and authority under the statutes to make the contract.   The alleged want of power was predicated upon the grounds that the college was

prohibited by the statutes from making the contract, and that, having no funds with which to pay for the property at the time of making the contract, it was void for want of consideration and mutuality.

As stated above, the cause of action for reformation was abandoned, and the grounds upon which injunction against the school district was sought were also abandoned on circuit. The point presented for the decision of the Court is thus stated by appellants' attorneys in their argument: "The complaint contained several allegations and matters which were not insisted upon before the trial Judge, and the relief was sought before him only upon one ground, to wit: That the Winthrop trustees were without funds with which to purchase the property when they made the offer of $20,000 therefor; and that, in consequence, the contract, or agreement, between them and the district trustees was void and not enforceable for want of mutuality."

After the case had been argued on circuit, but during the term and before the decision was filed, an order was submitted to the Court by the attorneys for the college, upon which the consent of the attorneys for the school district was endorsed, allowing the college to amend its answer by alleging its readiness to pay the purchase price of the property, and praying that, upon its doing so, the trustees of the school district be required to execute and deliver to the trustees of the college a proper conveyance thereof. Notice of the presentation of this order was given attorneys for plaintiffs, and it was granted over their objection, on the ground that it was consented to by the parties directly interested, and none of the other parties to the action could be prejudiced thereby. In the prayer of the original answer, the college had asked that the trustees of the school district be required to specifically perform their agreement; and in the prayer of the original answers of the majority of the trustees of the school district and of the school district, as

a corporation, the Court was asked to compel specific performance of the agreement by the college.

The Circuit Court found that there was no evidence that the college was not able to pay for the property, without using the funds appropriated specifically for the erection and equipment of the school building, and that there was no evidence of any intention on the part of the trustees of the college to misapply any of the funds of the college, and dismissed the complaint for injunction; and decreed that, upon payment by the college of the purchase price of the property, the school district execute and deliver to the trustees of the college a proper conveyance thereof. The Court further decreed that the trustees of the college should not use any of the money appropriated by the legislature, or any of the amount raised as a condition of obtaining that appropriation in paying for the property.

The grounds of appeal present the following questions: 1. Was the college prohibited by statute from making the contract? 2. If not, was the contract void for want of consideration, and, therefore, for want of mutuality, because the college did not have in hand, at the time it was made, funds sufficient to pay for the property; and, if so, could the plaintiffs take advantage of it, and have the contract annulled, even though the college was, at the time of the hearing on circuit, able and willing to buy and pay for the property, without using any funds in which the plaintiffs, as citizens and tax payers, were interested? 3. Were the plaintiffs prejudiced by the amendment allowed and the decreeing of specific performance between the contracting parties? 4. Can plaintiffs now—on this appeal—raise the point, for the first time, that it does not appear that the consent of the county board of education had been given to the sale of the property by the district trustees, as required by the provisions of section 1213 of the Code of 1902?

Amongst the powers conferred on the trustees of the college by the act of incorporation, it is provided (sec.

1288, Code 1902) that they shall have "the right * * * to contract and be contracted with, and may own, purchase, sell and convey property, both real, personal and mixed, and are authorized and empowered to receive and hold donations, devises, bequests and legacies for the use and benefit of said institution: *Provided,* That all property purchased under the authority of this article shall be free from liens and encumbrances, and title to the same as well as to any donations that said board may receive shall be taken in the name of the trustees, in their corporate capacity, and shall become the property of the State of South Carolina. * * * They shall possess all the power necessary for the accomplishment of the trust committed to them, viz.: The establishment, conduct and maintenance of a first-class institution for the thorough education of the white girls of South Carolina, the main object of which shall be (1) to give to young women such education as shall fit them for teaching; (2) to give instruction to young women in (numerous branches of education specified). Said trustees shall have authority to add, from time to time, such special features to the institution, and to open such new departments of training and instruction therein as the progress of the times may require."

It seems clear that the powers conferred by the parts of the act of incorporation above quoted are ample to sustain the making of the contract in question. In fact, we do not understand appellants to deny, but, on the contrary, to admit that the college had power and authority to make the contract in question, under the terms of its original charter. But they contend that the powers therein granted have been abridged or taken away by subsequent acts of the legislature, which repealed, by implication, the above quoted provisions of the charter, at least to the extent of denying to the college the power of making the contract in question. The acts relied upon by appellants as affecting this result are,

*First.* "An act to provide for the economical completion of Winthrop Normal and Industrial College of South Carolina, now in process of erection at Rock Hill, and to appropriate money for the same," 21 Stat., 869; and, *second,* the supply bill of 1896, 22 Stat., 265. The first of said acts had reference to the completion of the main college building, and certain other buildings, which were then in process of construction. It provided that the labor of convicts should be furnished by the superintendent of the penitentiary, appropriated $20,000 for the purchase of material and payment for additional labor, and provided that said sum should not be available or drawn from the treasury, until the board of trustees had satisfied the State treasurer that the buildings could be completed and made ready for occupation by the expenditure of that amount. In the same act, another appropriation was made for the payment of "outstanding liabilities, contracts already made, as set forth in the report of the board of trustees." The last section of the act appropriated a certain amount for the purchase of machinery for the laundry, and the furnishings for the main building, the kitchen, dining room and dormitories, and provided that the said amount should be spent for said purposes and no other. The last sentence of the section reading: "That the board of trustees are hereby prohibited from incurring any obligations without consent of the general assembly beyond those herein contemplated."

In the supply bill for 1896 (22 Stat., 265) after an appropriation for "running expenses, equipment and permanent improvements," another is made "for the payment of back indebtedness and existing liabilities" with this *proviso*. "That no new contracts or new liabilities in excess of the amounts herein appropriated shall be made or incurred, either directly or indirectly, in behalf of said college."

A consideration of these acts in all of their purposes and provisions, shows clearly that the intention of the legislature in the first of said acts was merely to limit the board of trus-

tees in their contracts and expenditures in completing and furnishing the buildings then in process of construction to the amounts therein appropriated; and in the second, to limit their contracts and expenditures to the appropriations therein made for the purposes therein specified. No intention to limit or take away any of the general powers conferred upon the board by the charter is expressed, and none can be implied from the language used. On the other hand, the construction contended for by plaintiffs would long since have completely stopped the operations of the college. The fact that, since the adoption of the acts above referred to, the original charter of the college has been re-enacted in the Code of 1902 without change, shows, beyond controversy, that there was no intention on the part of the legislature by said acts to annul or abridge any of the powers therein granted. When these acts are read in the light of the circumstances therein mentioned, there is no repugnancy whatever between them and the original charter of the college, and, therefore, no room for the application of the doctrine of repeal by implication.

But, as the trustees of the college are public officers (*Sanders* v. *Belue,* 78 S. C., 171, 58 S. E., 762), the general power conferred upon them by the charter to contract is limited by the provisions of section 606 of the Civil Code of 1902, which reads: "It shall be unlawful for any public officer, State or county, authorized by law to so contract, to enter into or (any?) contract, for any purpose whatsoever, in a sum in excess of the tax levied, or the amount appropriated for the accomplishment of such purpose." The manifest intention of that section was to protect the State and counties against either legal or moral obligations incurred by the State or county officials in excess of the taxes levied, or the amounts appropriated for the purposes specified by the levy or appropriation.

It does not follow, however, that the college had no power to make the contract in question. Because, under the

general power, the trustees could make a valid contract. to apply to any particular purpose funds in their hands, or funds which they expected to receive from donations or bequests, and the Courts should compel the performance of such contracts, provided such use of the funds would be within the terms of the appropriation, donation or bequest. The contract contemplated performance on condition that donations which could be applied to the payment of the purchase money should come into the hands of the trustees. The Court decreed performance on that condition.

We do not see what right the plaintiffs have to complain of the alleged want of mutuality in the contract. That is a matter of which only the other party to the contract. and the State, from which the trustees derive their powers, may complain. To be sure, the plaintiffs, as citizens and tax payers, had the right to prevent any misappropriation of the funds of the college. But the referee and the Circuit Court have found, and we concur in that finding, that there was no evidence of intention on the part of the trustees to misapply any funds of the college. They have been forbidden by the circuit decree from doing so. This is all the plaintiffs had the right to ask. Even if the contract was wanting in mutuality because the college did not have funds with which to pay for the property at the time of the purchase, and even if the school district could have successfully resisted performance of the contract on that ground, it does not follow that it could not waive that defense and voluntarily complete the contract. That is what it virtually asked to do in the prayer of its answer, and by consenting to the amendment of the answer of the college. We cannot see that any rights of the plaintiffs have been prejudiced by the amendment. It does not matter that neither of the contracting parties excepted to the report of the referee, recommending that the complaint be dismissed. By their consent, a decree for specific performance has been made, and it stands as their contract.

2—87

As to the last ground, it is too well settled to require cita-
tion of the cases that this Court will not consider any
point which was not presented to and considered by
the Circuit Court, unless it involves the jurisdiction
of the Court.

Judgment affirmed.