## 15660

### AYRES v. CROWLEY *ET AL.*
(30 S. E. (2d), 785)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, S. C.,
Counsel for Appellant,

*Mr. J. Davis Kerr,* of Spartanburg, S. C., Counsel for Respondents,

July 5, 1944.

MR. CHIEF JUSTICE BAKER delivered the unanimous Opinion of the Court:

The appellant and the respondents are dealers in cotton waste products, the appellant having his place of business at Greenville, and the respondents having their place of business at Spartanburg, where in addition to their waste cotton business, the respondents maintained a large warehouse

of cotton storage type, and were engaged in the business of public warehousemen.

On November 21, 1942, appellant purchased from respondents a quantity of cotton waste, then belonging to respondents, and in their warehouse. This waste cotton, with the exception of a portion which appellant had sold in the meantime, and two other lots of waste purchased from respondents by appellant on January 14, 1943, were destroyed on January 21, 1943, when respondents' warehouse burned.

Respondents duly gave notice to the appellant that storage charges on the lot of cotton waste purchased on November 21, 1942, would commence on the following December 1, and that storage charges on the two lots of waste purchased on January 14 would commence on January 18.

Following the destruction by fire of the respondents' warehouse and its contents, the appellant, upon ascertaining that the respondents did not carry any insurance for his benefit, demanded that they pay him for his loss; and upon their refusal so to do, commenced this action.

The complaint alleged that respondents were engaged in the business of public warehousemen; that they gave no notice to appellant, "as they were required by custom and statute to do, that they had not insured or caused to be insured against loss or damage by fire plaintiff's (appellant's) said waste, as a consequence of which plaintiff (appellant) did not procure the insurance for the value of said waste, which he would have done if said notice had been given by defendants (respondents) as they were required by law and custom to do; that they did not give and file the bond as required by Section 7177 of the Code of Laws of South Carolina 1942; that the defendants (respondents) failed and neglected to give to the plaintiff (appellant) the receipt for such waste, required to be given by the provision of Section 7179 of the 1942 Code of Laws of South Carolina, and specifically failed and neglected to give to the plain-

tiff (appellant) a receipt, as required by said Section 7179, stating the amount and rate of insurance on such cotton waste so stored and warehoused, and failed and neglected to give to the plaintiff (appellant) such a receipt showing the amount of the bond required by Section 7177; said defendants (respondents) further failed and neglected to conform to the customs and usages prevailing in the waste trade generally and locally in Spartanburg and its vicinity with respect to the storage of cotton waste products, such as that herein referred to, by notifying plaintiff (appellant) that they had not procured and did not carry insurance affording protection against fire and covering the property of plaintiff (appellant) so stored and warehoused by defendants (respondents)." It further alleged a custom and usage which existed in the waste trade generally, and in Spartanburg and the vicinity thereof, "that where the cotton waste was purchased from a cotton waste dealer, such as defendants (respondents) are, and stored by such dealer in its warehouse that such dealer and warehousemen insure or caused to be insured such waste for the benefit of the purchaser and owner thereof against loss or damage by fire, or if such dealer and warehousemen procured no such insurance that dealer and warehousemen notify such purchaser and owner that dealer had not procured such insurance, so that the purchaser and owner thereof might procure insurance himself for his protection against loss or damage by fire."

The answer of the respondents admitted the purchase by appellant from them of waste cotton and its storage and destruction in their warehouse, when the warehouse burned and that no receipt was issued but denied any duty on their part to insure the waste cotton of appellant, or give him notice that it was not insured, and denied the custom and usage in the waste trade alleged in the complaint.

Upon a trial of the case, the trial Judge excluded all testimony as to the alleged custom and usage in the waste trade generally, and in Spartanburg and the vicinity thereof, and

on the motion of respondents, at the conclusion of the testimony on hehalf of appellant, granted a nonsuit.

From such order of nonsuit, this appeal is prosecuted, and appellant states the "Questions Involved" as follows:

"1.   Are the defendants, as public warehousemen, liable for loss of plaintiff's cotton waste by destruction by fire because of their failure to furnish bond or to issue the receipt showing insurance in force, under a proper construction of Sections 7177, 7178 and 7179 of the 1942 Code?

"2.   Was evidence admissible to show a custom or usage in the cotton waste trade, as between a seller and a purchaser of waste, with regard to carrying insurance, where the waste was, and continued to be, stored in the seller's warehouse?

"3.   Was evidence admissible to show a custom or usage, among warehousemen storing cotton waste and their customers, as to carrying insurance on the customers' waste?

"4.   If either question 2 or 3 as to the admissibility of evidence be answered in the affirmative, was there evidence of a custom or usage which would, if found by the jury to be true, make the defendants liable for loss of plaintiff's waste?"

The complaint does not allege, nor was any testimony tendered to prove, negligence with reference to the fire. There is not the slightest suggestion that the fire was due to any negligence on the part of the respondents. Therefore, the line of cases such as *Fleischman, Morris & Co. v. Southern Railway,* 67 S. C., 237, 56 S. E., 974, 9 L. R. A. (N. S.), 519; *Albergotti v. Dixie Produce Co.,* 202 S. C., 357, 25 S. E. (2d), 156, and *Kelley v. Capital Motors,* S. C., 28 S. E. (2d), 836, are if applicable at all, only remotely so in a most general way.

Section 7176, Code of 1942, provides how a warehouseman may become a public warehouseman. Section 7177 of the Code 1942 requires a public warehouseman to give bond

in a surety company authorized to do business in South Carolina in an amount equal to ten (10) per cent. of the estimated value of the goods for which said warehouseman will provide storage, such bond to be conditional for the faithful performance of the duties of a public warehouseman, etc. Section 7178 of the Code 1942 is in part as follows:

"Whenever such warehouseman fails to perform his duty, or violates any of the provisions of this chapter, any person injured by such failure or violation may bring an action in his name, and to his own use, * * * on the bond of said warehouseman * * *."

Section 7179 of the Code 1942, reads in part:

"Every such warehouseman shall, when requested thereto, in writing, by a party placing property with him, or it, on storage, cause such property to be insured for whom it may concern. Every such warehouseman shall, except as hereinafter provided, give to each person depositing property with him for storage a receipt therefor, which shall be negotiable in form, and shall decribe the property, distinctly stating the brand or distinguishing marks upon it, and if such property is grain the quantity and inspected grade thereof. The receipt shall also state the rate of charges for storing the property, and the amount and rate of insurance thereon, and also the amount of the bond given to the clerk of the court as hereinabove * * *."

It is admitted that respondents did not file a bond, but as stated by the trial Judge, such failure to file bond neither increased nor diminished the liability of respondents, and was not detrimental to appellant. There is no allegation that respondents were or are insolvent, and of course the liability of the surety would depend upon the liability of the principal. The giving of a bond by a warehouseman simply afforded any person injured by the fail-

ure of such warehouseman to perform his duty, an additional remedy.

At common law a warehouseman is not required to effect insurance on property stored with him, and is not liable as an insurer himself, so in order to meet that situation, and incur liability under certain circumstances, the Legislature said in 1896 (Section 7179, Code of 1942), that "such warehouseman shall, when requested thereto, in writing, by a party placing property with him, or it, on storage, cause such property to be insured for whom it may concern."

It is admitted that there was no request made by appellant either written or oral of respondents that they insure the waste products he had on storage in their warehouse. The failure of the appellant to comply with the only law in this State whereby the duty would devolve upon the respondents to insure his property on storage in their warehouse appears to us to be the proximate cause of appellant's loss, that is, that his property was destroyed by fire without insurance coverage.

But the appellant contends that under the second and third sentences of the Statute (Section 7179), irrespective of any request in writing that respondents insure the property of appellant, it was mandatory that they issue him a receipt describing the property stored in their warehouse, and stating the rate of charges for storing the property, and amount and rate of insurance thereon; and that if such receipt had been issued, which necessarily would have shown that no insurance was carried on his property in storage, that then the appellant would have procured insurance.

From a reading of the original Act passed in 1896, and as amended, it is apparent that the purpose of requiring a public warehouseman to issue a receipt for property stored was to guard against disputes as to what property was stored, and afford to bailors a convenient meth-

od of disposing of their interest therein by an assignment of the receipt, except of course when a nonnegotiable receipt has been issued at the request of the bailor.

We agree with the learned trial Judge that the provision as to stating the amount and rate of insurance on the receipt is predicated upon a previous written request by the bailor for such insurance; otherwise, insurance would not be mentioned in the receipt, or the Statute would read, "and amount and rate of insurance, if any, thereon." However, the words "if any" are not contained in the Statute. It seems to us that the requirement of the receipt containing the information as to the amount and rate of insurance, after written request that the bailee procure insurance on the bailor's property in storage, was for the purpose of giving the bailor or his assignee full information so that such bailor or his assignee could either increase or decrease the insurance coverage if he saw fit, or if he could obtain a more beneficial rate, he could take over the insurance of his property. Aside from this, however, and as held by the trial Judge, appellant was bound by the knowledge that he had made no written request for insurance, and there is no evidence of any contract on the part of respondents to provide insurance, and therefore their failure to issue a receipt could not be deemed to be a proximate or concurring cause of appellant's alleged loss.

The appellant offered to prove that there is a custom in the waste trade whereby, when a purchaser buys from a dealer waste which is stored in the dealer's warehouse, the dealer either insures it or notifies the customer that he does not have it insured.

The trial Judge excluded all testimony relating to such custom and usage for the reason that it would be in derogation of the Statute referred to by the appellant in his complaint, and in this holding we agree. When parties enter into a contract, all the laws of the State that

may relate to the subject-matter of the contract are part of that contract. *Massachusetts Bonding & Insurance Company v. Law*, 149 S. C., 402, 147 S. E., 444. And in *Inabinet v. Royal Exchange Assurance of London et al.*, 165 S. C., 33, 162 S. E., 599, 600, it is stated: "Every contract entered into in this state embodies in its terms all applicable laws of the state just as completely as if the contract expressly so stipulated."

At the time respondents' warehouse and its contents were destroyed by fire, appellant and respondents occupied the relation of bailor and bailee, respectively, and custom or usage could not take precedence over the statutory law of the State.

All exceptions are overruled and the order of nonsuit is affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.