## 0146

William L. OSWALD, Respondent, v. COUNTY OF AIKEN and Council Administrator Form of Government for Aiken County, Appellant.

(315 S. E. (2d) 146)

Court of Appeals

*C. Wesley Smith,* Aiken, *for appellant.*

*William H. Burkhalter, Jr.,* of *Garvin, Fox, Zier & Burkhalter,* North Augusta, *for respondent.*

April 13, 1984.

BELL, Judge:

William L. Oswald brought this action to recover payment for compensatory time he accumulated prior to his resignation as a deputy sheriff for Aiken County. A jury returned a verdict of $5,684.98 for Oswald. The County appeals. We affirm.

Oswald served as a deputy sheriff for Aiken County from 1976 until early 1979. After an intial period of service he was assigned to the mobile crime lab where he was responsible for processing all major and minor crime scenes within the County. Only two persons worked in this section of the sheriff's department. Consequently, Oswald was required to perform an extra-ordinary amount of overtime work. The sheriff testified that his performance in this job was "excellent."

Under the reporting system used in the sheriff's department, all time in excess of forty hours a week was accounted for and documented. This extra time was designated as "compensatory time." Subject to the needs of the department, deputies could take time off from work and credit it against accumulated compensatory time. During the period Oswald was employed, at least three other deputies were paid for their accumulated compensatory time when they left the department.

Due to the demand for his services, Oswald was unable to use up his compensatory time as fast as he accumulated it. By March, 1979, when he gave notice of his resignation from the sheriff's department, he had accumulated 1,188 hours of compensatory time. Upon tendering his resignation, Oswald requested the County to pay him for his compensatory time. The request was denied, ostensibly on the basis of an "emergency ordinance" passed by County Council on January 16, 1979, prohibiting such payments to terminating employees.

After the County refused to pay for the compensatory time, the sheriff agreed to Oswald's request to remain on the payroll in an extended paid leave status until he had used up his compensatory time. The County denied the request for

extended leave. Thereafter, Oswald filed suit to recover payment for the compensatory time.

## I.

The main question on appeal is whether the County, during the period of Oswald's employment, had a policy of making payment to terminating employees for accumulated compensatory time. The County denies the existence of such a policy. It maintains there was no evidence showing it expressly authorized payment for compensatory time. For this reason, the County contends it was entitled to summary judgment, a directed verdict, or a new trial on the issue of its liability to pay Oswald's claim. Oswald, on the other hand, argues that the County is estopped from denying his right to payment, because payment for compensatory time is within the County's authority and was in fact made to other county employees.

The County's argument contains both legal and factual elements. We address the question of law first.

## A.

The County maintains it cannot be estopped from denying the policy because estoppel will not lie against a governmental body. *Looper v. City of Easley,* 172 S. C. 11, 172 S. E. 705 (1934). We think this states the principle too broadly. A governmental body is not immune from the application of the doctrine of estoppel where its officers or agents act within the proper scope of their authority. *Abbeville Arms v. City of Abbeville,* 273 S. C. 491, 257 S. E. (2d) 716 (1979); *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). This rule has been applied to the actions of county officials. *See Byars v. Cherokee County,* 237 S. C. 548, 118 S. E. (2d) 324 (1961).

It was undoubtedly within the power of the County to pay its employees for compensatory time, if it wished to do so. *See* § 4-9-30, Code of Laws of South Carolina, 1976.[1] The county administrator, as the officer responsible for administration of county policies relating to compensation of personnel, had authority to approve such payments on the

---

[1] The County conceded this point at trial. Tr. 292.

County's behalf. *See* § 4-9-630, Code of Laws of South Carolina, 1976. The county cannot escape liability to Oswald under a policy it had the general power to implement on the ground that the administrator was not technically authorized to approve payment for compensatory time.[2] *See Townes Associates, Ltd. v. City of Greenville, supra,* 266 S. C. at 87, 221 S. E. (2d) at 776.

The County places considerable reliance on *Baker v. State Highway Department,* 166 S. C. 481, 165 S. E. 197 (1932), to support its estoppel argument. *Baker* held that because the state highway department had no power to accept payment of license fees in anything but lawful money, it could not be estopped from refusing payment by cashier's check even though its license application stated remittance could be made by cashier's check. *Baker* is inapplicable here, for it is based on the general principle that estoppel will not lie against a governmental body for *ultra vires* acts. Payment for compensatory time by a county is not an *ultra vires* act; Aiken County had the power to make such payments. The other authorities cited by the County[3] also deal with *ultra vires* acts and, therefore, do not control this case.

### B.

Since, as a matter of law, the county could be estopped from denying its policy of paying for compensatory time, the re-

---

[2] In a similar vein, the County takes exception to the trial judge's refusal to charge the jury that it is against the law for a public official to enter into any kind of contract without authority or in excess of the funds appropriated for such purpose. The requested charge was based in part on Code § 11-1-40. The trial judge properly refused to give the requested charge because it related to public contracts and he had already stricken Oswald's contract cause of action. He also refused a request to give the same charge, substituting the word "obligation" for the word "contract." This was likewise within his discretion. The requested substitute charge would have misstated the law, since a public body may apply to any valid purpose within its power the funds in its hands. *Cf. Long v. Dunlap,* 87 S. C. 8, 68 S. E. 801 (1910). The County did not claim it had no funds in hand to pay Oswald, but only that no funds had been appropriated for the specific purpose of paying compensatory time. Many ordinary expenses of government are paid from general operating funds rather than from appropriations for one specific purpose.

[3] *Carolina National Bank of Columbia v. State,* 60 S. C. 465, 38 S. E. 629 (1901); *Farrow v. City Council of Charleston,* 169 S. C. 373, 168 S. E. 852 (1933); *Looper v. City of Easley,* 172 S. C. 11, 172 S. E. 705 (1934).

maining question is whether the evidence supported the existence of the policy. This was an issue of fact for the jury.

On appeal, the scope of factual review is limited. The factual findings of the jury will not be disturbed unless there is no evidence to support its verdict. *Odom v. Weathersbee*, 225 S. C. 253, 81 S. E. (2d) 788 (1954). We find evidence from which the jury could conclude the County's policy was to pay terminating employees for compensatory time.

The county administrator, the county personnel director, and the chief clerk of the sheriff's department all testified that the County had a policy or practice of paying for compensatory time. The county administrator stated the practice had been in effect since at least 1973 and that it applied to deputy sheriffs and other county employees. The county personnel director personally processed payments for compensatory time to three deputy sheriffs in the fall of 1978. One deputy was paid $5,572.74 for his compensatory time[4] when he left the sheriff's department in late 1978. The personnel director acknowledged that such payments were the established practice at the time.

There was also evidence from which the jury could conclude that the policy of paying for compensatory time was in effect with the knowledge and approval of the county council. The council negotiated directly with the county administrator in June 1977 concerning payment for his compensatory time when he left his position as county civil defense director to become the county administrator. Council also adopted a set of county personnel policies in June 1977 which provided, among other things:

> *Compensatory Time:*
> Employees who earn compensatory time shall take time during pay periods when applicable. Department Heads will not receive compensatory time.

This written policy expressly acknowledged that employees other than department heads could earn compensatory time. Although it did not expressly state the County would pay

---

[4] The sum of $5,572.74 was paid for 67 hours of annual leave and 1,351 hours of compensatory time.

terminating employees for compensatory time, the qualification "when applicable" did indicate there were cases when taking time during pay periods would not be applicable. The jury could reasonably infer that the case of a terminating employee was one case in which the "applicable" policy would be to pay for the time rather than to require it to be taken during a pay period.

In other words, council's own actions and the June 1977 written policy corroborated the existence of earned compensatory time and were consistent with other evidence showing the County's policy was to pay terminating employees for their unused time. In the absence of more explicit written guidelines, it was reasonable to infer that the details of administering the policy on compensatory time were left to the county administrator in his capacity as the person responsible for personnel and budgetary matters. Taken as a whole, the evidence was sufficient for the jury to conclude, as Oswald alleged, that the County followed a policy of paying terminating employees for compensatory time.

## II.

The County next argues that if the doctrine of estoppel is applicable in this case, Oswald did not prove all the elements of estoppel. The elements of estoppel are (1) conduct by the party estopped which amounts to a false representation or concealment of material facts or which is calculated to convey the impression that the facts are otherwise than and inconsistent with those which the party subsequently attempts to assert; (2) the intention or at least expectation that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the true facts; (4) lack of knowledge or the means of knowledge of the facts by the other party; (5) reliance upon the conduct by the other party; and (6) a detrimental change of position by the other party because of his reliance. *Frady v. Smith*, 247 S. C. 353, 147 S. E. (2d) 412 (1966).

The County argues that elements (1) and (6) above were not established by the evidence. The contention that Oswald proved no conduct by the County inconsistent with the position it now takes against him is easily disposed of. Obviously, payment for compensatory time to other termi-

nating employees, including other deputy sheriffs, was conduct inconsistent with the position the County now takes against Oswald. The jury could reasonably infer, based on the evidence outlined previously, that these payments were made pursuant to an existing county policy.

The additional argument that Oswald failed to prove any change of position in reliance on the County's policy is also without merit. Oswald testified that when he joined the sheriff's department he began keeping records of compensatory time in accordance with departmental policy. He gave up time with his family to work extra hours and expected to be paid for unused compensatory time upon resignation. From his testimony, the jury could reasonably have inferred that Oswald worked extra hours in reliance on the County's policy of paying for compensatory time. The jury was not bound to conclude, as the County argues, that Oswald had a duty to work all of the extra hours without earning compensatory time.

## III.

The County also takes exception to the judge's charge to the jury. It claims the charge was erroneous in two particulars. First, it claims the judge gave an erroneous charge on the law of estoppel by silence. We have reviewed that charge and find it is entirely in accord with the law of this State. *See Southern Railway Co. v. Day,* 140 S. C. 388, 138 S. E. 870 (1926); *Ridgill v. Clarendon County,* 192 S. C. 321, 6 S. E. (2d) 766 (1939).[5]

Second, the County asserts the judge erred because he gave only a partial statement of the elements of estoppel when he repeated the definition of estoppel near the

---

[5] The county raises the same estoppel by silence argument in a different manner. It claims the judge erred in refusing to charge the jury "that a governmental body can act only through its constitutional and statutory provisions which in the case of the County Council, is through an ordinance or resolution granting that authority." If the requested charge means that the county cannot be estopped except by an ordinance or resolution, then it misstates the law and the judge had no duty to charge it. *See Bedenbaugh v. Southern Railway Co.,* 69 S. C. 1, 48 S. E. 53 (1904). If the requested charge had some other meaning, the judge was justified in refusing to charge it because it is ambiguous. *Knobeloch v. Germania Savings Bank,* 50 S. C. 259, 27 S. E. 962 (1897).

end of his additional charge. The judge's charge must be considered as a whole before prejudicial error can be assigned to a portion of it. *Waldrup v. Metropolitan Life Insurance Co.*, 274 S. C. 344, 263 S. E. (2d) 652 (1980). It is clear from reviewing the whole charge that the County's exception to the additional charge on estoppel is frivolous. The County asserts (we assume with no intent to mislead this Court) that the judge in his additional charge on estoppel instructed the jury "as to only those portions which had a bearing on the conduct of the [County] which unduly and prejudicially focused attention on only the conduct of the [County]." However, *immediately* prior to the portion of the charge to which exception is taken, the judge explicitly stated: ". . . the party claiming the estoppel must have acted on and thereby changed his position for the worst [sic]." In giving the additional instructions, the judge further cautioned the jury: ". . . you must consider these instructions which I am about to give you in the light of all other instructions given you by the Court." The County concedes the judge had correctly charged the law of estoppel in his prior general charge. In view of all this, we fail to perceive the reversible error the County claims.

## IV.

The County next asserts the judge erred in refusing to admit into evidence the June 1977 ordinance adopting certain personnel rules and policies, including the policy on compensatory time.

The admission of evidence is largely within the sound discretion of the trial judge. His rulings will not be disturbed on appeal unless he clearly abused his discretion. *Wright v. Public Savings Life Insurance Co.*, 262 S. E. 285, 204 S. E. (2d) 57 (1974). We find no abuse of discretion in refusing to admit the 1977 ordinance.

The County concedes the actual policy adopted by the ordinance was admitted into evidence. Indeed, all pertinent personnel policies from 1977 through the "emergency" ordinance of 1979 were read into the record in the presence of the jury. As far as the record discloses, there was nothing of relevance in the excluded ordinance that was not put before the jury in some other form. Since the ordinance was merely cumulative to other evidence, the trial judge was

within his discretion to exclude it. *State v. Lee,* 203 S. C. 536, 28 S. E. (2d) 402 (1943); *Weaver v. Whilden,* 33 S. C. 190, 11 S. E. 686 (1890). The County's exception is without merit.

### V.

Finally, the County contends Oswald's suit was barred by the statute of limitations. Section 15-3-560(3), Code of Laws of South Carolina, 1976, requires any action for services rendered brought by a former employee against a county having a population in excess of 85,000 people to be commenced within one year. As the Supreme Court held this statute unconstitutional in *Gillespie v. Pickens County,* 197 S. C. 217, 14 S. E. (2d) 900 (1941), it cannot be asserted to bar Oswald's action. We need not reach the further question of whether Oswald brought suit within one year after his cause of action accrued.

For the reasons stated, the County's exceptions are overruled and the judgment of the circuit court is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.