Eva Dell H. ARMSTRONG,
et al., Plaintiffs,

v.

SCHOOL DISTRICT FIVE OF LEXINGTON AND RICHLAND COUNTIES,
Defendant.

No. Civ.A. 3:997–903–0.

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 15, 1998.

Richard Mark Gergle, W. Allen Nickles, III, Gergle, Nickles and Grant, Columbia, SC, for Plaintiffs.

Vance J. Bettis, Marvin Richbourg Robinson, Gignilliat, Savitz, Bettis and Grant, Columbia, SC, for Defendant.

## ORDER

PERRY, Senior District Judge.

This matter is before the Court on cross motions for summary judgment. For the following reasons, the Plaintiffs' motion is granted and the motion of the Defendant is denied.

### SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c). The judge is not to weight the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appro-

priate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991).

## FACTUAL BACKGROUND

The material facts necessary to render a judgment in this action are stipulated by the parties or are established beyond dispute. The Plaintiffs are 132 employees of the Defendant School District Five of Lexington and Richland Counties ("District"). Plaintiffs employed as teachers receive, as a matter of state statute, contracts of employment for periods of nine to twelve months annually. Plaintiffs employed in non-teaching positions receive annual "assurances" of employment.

The District is a public school district organized under the laws of South Carolina and subject to all statutes which govern its operation. The District stipulates that any policies adopted by its Board must conform to State law. In this case, the Plaintiffs challenge the District's revised leave policy. Throughout the period relevant to this action, South Carolina law entitled public school employees to earn and accumulate sick leave. The relevant statutory language provides:

All full time employees of public schools accrue sick leave on the basis of one and one fourth days of sick leave for each month of active service or twelve days for nine months of active service. Sick leave accrued but not used may be accumulated up to ninety days if the employees do not violate their respective contracts. S.C.Code Ann. § 59–1–400 (1976, as amended).[1]

The Plaintiffs in this action are each long time employees of the District who chose to accumulate benefits earned over a number of years. In other words, Plaintiffs placed accumulated benefits "in the bank," saving these leave days for use at their daily rates for any approved absence from employment. Additionally, the saved benefits guaranteed Plaintiffs substantial lump sum retirement compensation (up to 90 days pay, almost one-half of a typical teacher's annual compensation). Because State law prohibits districts from reducing teacher pay, each employee choosing to save a day of leave had a reasonable expectation that its value would increase with additional years of service and normal increases in salary. *See*, S.C.Code Ann. § 59–20–50 (1976, as amended.) Indeed, the policy under which Plaintiffs saved these benefits *guaranteed* payment at the daily rate on use, separation or retirement. That policy, entitled GBRI, complied with State law in allowing employees to use sick leave during the contract year earned. Effective August 12, 1996, the District's Board adopted a revision to the leave policy. The revised policy, entitled GBRI/GCRG, retained the twelve days of leave accrued per contract year for nine month employees, but included an implementation schedule attached as "Appendix A" to the policy. Plaintiffs assert that the implementation schedule violates their contractual and constitutionally protected property interests in providing that:

After the effective date of this revised policy GBRI/GCRG, all requests for leave for employees having an accrued leave balance shall be paid first from pre-amendment accrued leave. Bonuses for employees having accrued leave in excess of 90 days shall also be paid first from any pre-amendment accrued leave days.

The District contends that its implementation schedule merely substitutes one form of leave for another so that Plaintiffs are not deprived of any vested benefits. This argument ignores controlling State law and undisputed material facts. When earned, leave accumulated by Plaintiffs under policy GBRI had a specifically stated cash value. For any leave accumulated before revision to this policy, the District is obligated to pay the Plaintiffs their per diem rate not only for approved leave days, but also upon retirement or separation following a stated period of

---

1. The plain language of § 59–9–400 establishes certain rights critical to this litigation:

    1. Public school employees accrue sick leave on an annual (contractual) basis;

    2. Employees holding nine month contracts accrue twelve days of sick leave per year; and

    3. Leave which is "accrued" (earned), but not "used" (spent) may be "accumulated" (saved) up to 90 days provided that the employees "do not violate their respective contracts."

service. By contrast, leave accumulated following policy revision GBRI/GCRG has a declining redemption value.

The declining value of sick leave accumulated following the policy revision is illustrated in a "Summary of Leave Policy GRBI/GCRG" prepared by the District. This Summary shows that in contrast to the guaranteed daily rate for sick leave accumulated under policy GBRI, leave accrued and accumulated after the revision will ultimately provide retiring or separating employees a "substitute rate of pay" which is less than 20% of the average daily rate paid to teachers in the District.

Plaintiffs filed a grievance with the District in protest to the raiding of their leave benefits. In response to this grievance, the District for the first time examined the financial impact of its implementation schedule on employees. Dr. Charles R. Lee, the District's chief financial officer, analyzed employee leave records and projected that requiring exhaustion of leave accumulated under prior contracts will cause employees to lose approximately $2,842,586.00. When the District refused to reconsider its action, the Plaintiffs filed suit in the Court of Common Pleas for Richland County. The District removed the litigation to this Court.

### DISCUSSION

#### A.

■ As employees of public schools, Plaintiffs are entitled to compensation guaranteed by State law and District policy. *See, generally, Ayres v. Crowley,* 205 S.C. 51, 30 S.E.2d 785 (S.C.1944); *City of North Charleston v. North Charleston,* 289 S.C. 438, 346 S.E.2d 712, 715 (S.C.1986) (contracts incorporate State law); *see, also, Hogsed v. Lancaster Area Schools Board Trustees,* 283 S.C. 42, 320 S.E.2d 724, 727 (S.C.App.1984) (policies adopted by school boards are contractual, binding upon districts as well as their employees). Similarly, the Fourth Circuit has held that "a statute is itself treated as a contract" and that "contracts generally are understood to incorporate existing law." *Baltimore Teachers Union v. Mayor, City Council of Baltimore,* 6 F.3d 1012, 1016 (4th Cir.1993). Accordingly, a statute becomes a part of a contract "even if the parties have not expressly incorporated it." *Baltimore,* at 1017, citing *United States Trust Company of New York v. New Jersey,* 431 U.S. 1, 20, n. 17, 97 S.Ct. 1505, 1516, n. 17, 52 L.Ed.2d 92 (1977).

The South Carolina General Assembly has determined that public school employees are entitled to "use" sick leave and to "accumulate" sick leave at the end of the school year, provided the employees "do not violate their respective contracts." S.C.Code Ann. § 59–1–400 (1976, as amended). Separate legislation provides that employees having accumulated sick leave may redeem or "cash in" those benefits on retirement. *See,* S.C.Code Ann. §§ 9–1–1140; 1180 (1976, as amended).

■ Leave available to public school employees falls into two categories, accrued and accumulated. Accrued leave is earned during a current contract. Accumulated leave is that which remains at the end of the contract term. Under its prior policy, the District did not compel the exhaustion of accumulated leave until all accrued or current leave had been used. This was consistent with the statutory provision that leave accrued by public school employees in a current year may be *used and accumulated* at the discretion of the employees. S.C.Code Ann. § 59–1–400 (1976, as amended). By policy, District employees have the right to cash in up to ninety (90) days of leave accumulated under their respective annual contracts and assurances. Prior to the adoption of the implementation schedule challenged in this action, the District guaranteed that employees retiring from the District "will receive full pay for each day of annual and cumulative leave not taken." In addition, employees were entitled to annual bonus payments each year in which their leave balance exceeded 90 days. These bonus payments were without cost to the employees and involved no deduction from their accumulated leave balances.

■ In the challenged implementation schedule, the District for the first time imposed an exhaustion requirement as a condition for using accrued current sick leave. Unlike the prior policy, the District's implementation schedule for GBRI/GCRG condi-

tions use of accrued, current leave upon exhaustion of accumulated leave. In requiring exhaustion of accumulated leave, without any finding that Plaintiffs "violated their respective contracts," the District invades benefits earned and vested under prior contracts of employment as a condition of using current benefits. This action violates law and the employment rights of Plaintiffs.

The exhaustion requirement contained in the challenged implementation schedule reduces compensation to employees on retirement or separation because pay for leave earned after the revision is calculated on a discounted basis. Additionally, to obtain a year-end bonus for having accumulated more than 90 days of leave, employees are now required to exhaust leave accumulated *before* the policy revision even though all bonus days are necessarily accrued *after* the revision. As a result, the exhaustion requirement replaces an accumulated (banked) day having a daily rate cash value with a post-revision day having a discounted cash value. As projected by the District's chief financial officer, this scheme will cost employees $2,842,586.00 in lost benefits.

■ A fundamental rule of contract construction provides that the law at the time of contracting is a part of the agreement. *City of North Charleston v. North Charleston*, 289 S.C. 438, 346 S.E.2d 712, 715 (S.C.1986). A public entity cannot materially alter or add to law in any fashion which circumvents legislation. *S.C. Tax Commission v. S.C. Tax Board of Review*, 278 S.C. 556, 299 S.E.2d 489 (S.C.1983). Accordingly, any regulations, orders or policies which add to or alter statutes are void. *Society of Professional Journalists v. Sexton*, 283 S.C. 563, 324 S.E.2d 313 (S.C.1984).

■ To interpret legislation, the courts of South Carolina apply the "plain language rule." *See, Adkins v. Varn*, 312 S.C. 188, 439 S.E.2d 822 (S.C.1993). This rule provides that absent a demonstrated ambiguity, the plain meaning of a statute is determined by the words chosen by the General Assembly. *See, Paschal v. State Election Comm'n.*, 317 S.C. 434, 454 S.E.2d 890 (S.C.1995). Where statutory language conveys a clear and definite meaning, a court may not look for or impose another meaning. *See, Davis v. Doe*, 285 S.C. 538, 331 S.E.2d 352, 354 (S.C.1985), *Coker v. Nationwide Insurance Company*, 251 S.C. 175, 161 S.E.2d 175, 178 (S.C.1968).

■ The Supreme Court of South Carolina has determined that public policy requires enforcement of contractual obligations. *See, Rice v. Multimedia, Inc.*, 318 S.C. 95, 456 S.E.2d 381 (S.C.1995); *Warren v. Pilgrim Health & Life Insur. Co.*, 217 S.C. 453, 60 S.E.2d 891, 893 (S.C.1950). For this reason, public school districts may be judicially compelled to obey and enforce their own policies. *See, Hogsed v. Lancaster Area Schools Board of Trustees*, 283 S.C. 42, 320 S.E.2d 724, 727 (S.C.App.1984).

■ A public school district cannot disregard contractual and statutory obligations in a manner which results in loss of employee compensation. *See, Johnson v. Spartanburg County School District 7, 444* S.E.2d 501, 503 (S.C.1994), (public school district ordered to provide back pay and to reinstate paid work days improperly withheld in violation of the employee's contract.)

The statute which governs use and accumulation of sick leave for public school employees does not distinguish between employees receiving teaching contracts and others. *See,* S.C.Code § 59–1–400 (1976, as amended). Likewise, the District's own policies provide teachers and other staff the same leave benefits. Accordingly, in this case *all* Plaintiffs are entitled to utilize leave as *accrued and accumulated* under the terms of the statutes and policies in effect during which benefits were earned and services were provided. *See, generally, Holland v. Georgia Hardwood Lumber Co.*, 214 S.C. 195, 51 S.E.2d 744, 746 (S.C1949) (employer-employee relationship is necessarily contractual); *see, also Tharpe v. G.E. Moore Co.*, 254 S.C.196, 174 S.E.2d 397 (S.C.1970); *Shelton v. Oscar Mayer Foods Corp.*, 319 S.C. 81, 459 S.E.2d 851, 857 (S.C.App.1995) (every contract entered in South Carolina contains an implied covenant of good faith and fair dealing).

■ It is well established that the constitution protects property interests created

and defined by State law. *See, generally, Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) and *Hamilton v. Board of Trustees of Oconee County School District,* 282 S.C. 519, 319 S.E.2d 717, 721 (S.C.App.1984), both citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In this instance, Plaintiffs' property rights are defined both by State statute, which guarantees the right to use and accumulate leave benefits on an annualized basis, and by the District's leave policy which was in effect at the time the benefits were earned.

■■■ The South Carolina Supreme Court has recognized that public school employees have property interests arising from their contracts and State statutes. In *Johnson v. Spartanburg County School District 7,* 314 S.C. 340, 444 S.E.2d 501 (S.C.1994), a public school district unilaterally reduced the number of days in an employee's contract resulting in a loss of pay. Affirming an award of summary judgement in favor of the employee, the Court held that public school districts must operate in strict compliance with controlling legislation. In this present case, the challenged implementation schedule requires that leave accumulated during prior service be exhausted as a condition to use of leave guaranteed by statute in compensation for current service. This exhaustion requirement violates an unequivocal, legislative guarantee that leave may be used as accrued. S.C.Code Ann. § 59–1–400 (1976, as amended).

■■■ In 1976 the Attorney General of South Carolina gave an opinion regarding the vested nature of plaintiffs sick leave benefits. Responding to a series of questions posed by then State Superintendent of Education Cyril B. Busbee, the Office of the Attorney General offered the following information in reference to the leave statute upon which the Plaintiffs rely in this action:

A district may revise its more liberal sick leave policy to reduce it to the minimum requirements of the Act, provided such a revision does not interfere with vested rights, i.e. sick leave already accrued pursuant to past policy. The same rules of construction are applied in construing school board rules and regulations as in construing statutes. 78 C.J.S., Schools, Section 121, Power to Make Rules and Regulations. 'Rights which are vested are secure against impairment not only by affirmative legislation but also by repealing acts.' *Sutherland Statutory Construction,* Section 41.06, Statutes Affecting Vested Rights. Once sick leave is accrued, it becomes vested in an individual. *See,* 92 C.J.S., Vest.

1976 S.C.Atty.Gen.Op. No. 4441 (September 3, 1976) [2]

Despite the vested nature of benefits accrued pursuant to statute, the District asserts an inherent right to modify its leave policy. In support of this argument, the District offers *Alston v. City of Camden,* 322 S.C. 38, 471 S.E.2d 174 (S.C.1996). In that case, a municipality successfully argued that altering an ordinance which provided fringe benefits to its at-will employees did not violate any constitutional guarantees. A number of distinctions between *Alston* and this case are worth noting. Unlike the Plaintiffs here, the municipal employees in *Alston* had no statute which required the payment of fringe benefits. Moreover, unlike the Plaintiffs here, the *Alston* employees had no employment contracts and no statute which required the issuance of contracts. Finally, the only action addressed in *Alston* was a prospective reduction in benefits. In this case, Plaintiffs do not challenge prospective revisions to the District's policy. Rather, Plaintiffs seek to retain benefits earned under prior contracts and which constitute "wages" as a matter of State law. *See, generally,* S.C.Code Ann. § 41–10–10(2) (1994) ("Wages" include leave benefits); *see, also,*

---

**2.** Although not precedential, Attorney General Opinions are afforded weight by the courts of South Carolina, particularly in matters of statutory construction. *See, generally, Williams v. Morris,* 320 S.C. 196, 464 S.E.2d 97 (S.C.1995). In this instance, the Attorney General's Opinion is consistent with well established constitutional precedent and the specific finding that once sick leave is accrued, it becomes vested in an individual, has remained unchallenged for more than 20 years.

*Johnson v. Spartanburg County School District 7*, 314 S.C. 340, 444 S.E.2d 501 (S.C. 1994) (contractual compensation for public school employees is a constitutionally enforceable property interest). Simply stated, although the District may revise policy, it cannot implement policy revisions in a way that violates the law.

■■■ The District further submits that its leave policy exceeds statutory requirements and therefore is subject to modification upon notice to employees. In support of this argument, the District relies substantially upon *Bodie v. City of Columbia*, 934 F.2d 561 (4th Cir.1991) and *Matthews v. City of Greenwood*, 305 S.C. 267, 407 S.E.2d 668 (S.C.App.1991). Reliance upon these cases is misplaced. As the South Carolina Attorney General correctly determined, public school districts' leave policies are governed by statute and accumulated leave is vested in the districts' employees. *See*, 1976 S.C.Atty.Gen. Op. No. 4441 (September 3, 1996), *supra*. *Matthews*, on the other hand, involved prospective change in a company vehicle policy. No statutory benefit was involved and nothing was taken which had been previously earned by the employee. In *Bodie*, a firefighter failed to protest exclusion of sleep and meal time from compensable work time, thereby losing any claim to compensation under the Fair Labor Standards Act. Here, the record establishes that Plaintiffs raised timely objection to the revised policy through the filing of a grievance. In this context, Plaintiffs more closely resemble the firefighters in *Johnson v. City of Columbia*, 949 F.2d 127 (4th Cir.1991) who protested the exclusion of sleep and meal time, thereby preserving their claims despite continued employment.[3]

**3.** A review of the authorities offered by the District provides no support for the proposition that an employee's continued employment following protest regarding the violation of a statutory right constitutes a waiver of that right or evidences acquiescence on the part of the employee. Indeed, the District has offered no authority for the proposition that by policy a school district can circumvent State law or take from its employees benefits accumulated in accordance with State law. Moreover, the District's characterization of Plaintiffs' right to sick leave as an incho-

As additional grounds for relief, the Plaintiffs assert violation of the South Carolina Payment of Wages Act, the District's fiduciary obligation to properly administer their leave benefits and the equitable claim of estoppel. These grounds are addressed as follows:

## B.

■■■ South Carolina General Assembly has enacted legislation which guarantees payment of wages and prohibits unilateral withholding of benefits by employers. *See*, South Carolina Payment of Wages Act, S.C.Code Ann. § 41–10–10, *et seq.* (1994) The statutory scheme provided under the Payment of Wages Act defines employer to include "the State, or any political subdivision thereof . . . employing any person in this State." Code § 41–10–10(1).

In this case, the District's policy revision operates to deprive Plaintiffs of lawful wages, including bonus pay, annual leave and full retirement compensation. The District's chief financial officer has projected losses of $2,842,586.00 which will result to the Plaintiffs unless a declaration of their rights is entered. Such conduct, if carried out, would clearly violate the South Carolina Payment of Wages Act.

## C.

The District is responsible for calculating employee leave and maintaining employee leave records. Plaintiffs are completely reliant upon the District to administer leave policies in compliance with law and to provide proper compensation for leave accrued and accumulated. Additionally, the District's Board has a legal responsibility to see that the terms of its policies are enforced. *See*,

ate right, a right vesting at the occurrence of a future event such as retirement, is unfounded. The District offers several cases in support of this position including, *Willets v. City of Creston*, 433 N.W.2d 58 (Iowa App.1988); *Gauer v. Essex County Division of Welfare*, 211 N.J.Super. 706, 512 A.2d 587 (N.J.Super.1986). Not one of these cases address the *In Praesenti* right of the Plaintiffs in this case by the sick leave statute which provides a present right to use and accrue sick leave.

*Hogsed v. Lancaster Area Schools Board of Trustees,* 283 S.C. 42, 320 S.E.2d 724, 727 (S.C.App.1984).

A fiduciary relationship exists when a person places special trust or confidence in another. *See, generally, O'Shea v. Lesser,* 308 S.C. 10, 416 S.E.2d 629, 631 (S.C.1992). In this case, there can be no doubt that the District holds a position of confidence with regard to the Plaintiffs.

South Carolina courts broadly construe fiduciary obligations to protect the interests of those placing trust in others. By way of illustration, State appellate courts have found fiduciary relationships to exist in the following cases: *Loftis v. Eck,* 288 S.C. 154, 341 S.E.2d 641 (Ct.App.1986) (agent holding power of attorney in fiduciary relationship with his principal); *Lengel v. Tom Jenkins Realty, Inc.,* 286 S.C. 515, 334 S.E.2d 834 (S.C.App.1985) (broker is fiduciary of his client); *Matter of Moore,* 280 S.C. 178, 312 S.E.2d 1 (S.C.1984) (attorney in fiduciary relationship with his client); *Landvest Associates v. Owens,* 276 S.C. 22, 274 S.E.2d 433 (S.C.1981) (partners are fiduciaries to each other); *Talbot v. James,* 259 S.C. 73, 190 S.E.2d 759 (S.C.1972) (officers and directors of a corporation stand in a fiduciary relationship to shareholders).

In this instance, the District encouraged employees to place their trust in the maintenance of accumulated benefits for future use. Employees were promised that if accumulated benefits were not needed, then such benefits could be cashed in upon retirement or separation. By requiring employees to exhaust accumulated benefits as a precondition to use of benefits provided by statute in compensation for current employment services, the District violates a trust and breaches the fiduciary duty imposed by policy and statute. *See, Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 358 S.E.2d 150 (S.C.App. 1987) (courts must scrutinize with zealous vigilance transactions between parties occupying confidential relations toward each other, particularly with regard to transactions in which the dominant party secures a profit or advantage at the expense of a person under his influence).

### D.

The doctrine of estoppel may be invoked to enforce a promise or representation where the party seeking estoppel relied upon the representation and detrimentally changed its position. *See, Oswald v. County of Aiken,,* 281 S.C. 298, 315 S.E.2d 146 (S.C.App.1984); *Abbeville Arms v.. City of Abbeville,* 273 S.C. 491, 257 S.E.2d 716 (1979). Because estoppel applies to public as well as private parties, the District cannot evade liability for action taken by its Board which deprives Plaintiffs of benefits accumulated in reliance upon prior promises or representations. *See, Townes Assoc., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976); *Oswald v. County of Aiken,* 281 S.C. 298, 315 S.E.2d 146 (S.C.1984).

In *Oswald,* a sheriff's deputy brought an action to recover payment for compensatory time accumulated prior to resignation. The county denied his request, asserting that there was no "policy" which required the payment of compensatory time upon resignation from employment. Finding that the county's administrator had a longstanding practice of paying compensatory time and that the deputy had a right to rely upon this practice, the Court of Appeals held the county to be estopped from denying payment.

Here, as in *Oswald,* the District had a longstanding policy and practice of allowing employees to accumulate benefits toward retirement. This accumulation became the employee's property and subject to exhaustion *only if* the employee used all current leave provided under policy and statute. Like the deputy in *Oswald,* the Plaintiffs here are entitled to rely upon their employer's representations and the District is estopped from taking away benefits which have been previously earned.

### CONCLUSION

The record before this Court establishes beyond dispute that School District Five of Lexington and Richland Counties has violated the constitutional and employment rights of the Plaintiffs in implementing a policy revision that operates by exhausting accumulated (banked) benefits which are vested as a

matter of statute as a precondition to providing Plaintiffs access to leave benefits earned under current contracts and assurances of employment. Additionally, it is the finding of this Court that the District operates as a fiduciary in administering Plaintiffs' leave benefits and is compelled to comply with the plain language of the State's leave statute and its Payment of Wage Act. For these reasons, it is hereby Ordered:

1. That Paragraph 2 of the implementation schedule for Policy GBRI/GCRG provided as Appendix A to the revision dated August 12, 1996, is invalid as a matter of law. Accordingly, the following language shall not be enforceable and should be stricken from Policy GBRI/GCRG:

> After the effective date of this revised policy GBRI/GCRG, all requests for leave for employees having an accrued leave balance shall be filled first from pre-amendment accrued leave. Bonuses for employees having accrued leave in excess of 90 days shall also be paid first from any pre-amendment accrued leave days.

2. The exhaustion of any accrued leave benefits by operation of the above quoted policy revision shall be restored to the affected Plaintiffs.

3. All Plaintiffs shall be entitled to receive bonuses during the period following August 12, 1996, without reference to the above quoted policy revision.

4. Any monetary benefits withheld from Plaintiffs as a result of the operation of the above-quoted policy revision shall be restored.

5. The District shall make payment to Plaintiffs' counsel for attorney fees and costs incurred in this litigation. Counsel for Plaintiff is instructed to provide counsel for the District a statement of attorney fees and costs within 15 days of this Order. Any objection to the attorney fees and costs submitted by Plaintiffs shall be filed by this Court within 30 days thereafter.

*IT IS SO ORDERED.*