**Lorraine WATKINS, Plaintiff,**

v.

**DISABILITIES BOARD OF CHARLESTON COUNTY, Defendant.**

**C.A. No. 2:05–1951–PMD.**

United States District Court, D. South Carolina, Charleston Division.

April 13, 2006.

---

Chalmers Carey Johnson, Chalmers Johnson Law Firm, Charleston, SC, for Plaintiff.

Nancy Bloodgood, Young Clement Rivers and Tisdale, Charleston, SC, for Defendant.

Bonnie Travaglio Hunt, Chalmers Johnson Law Firm, Charleston, SC.

## ORDER

DUFFY, District Judge.

This matter is before the court on Defendant Disabilities Board of Charleston County's ("Defendant" or the "Board") Motion for Summary Judgment.

## BACKGROUND

Plaintiff Lorraine Watkins ("Plaintiff" or "Watkins") worked as a Residential Care Specialist with the Board from July 15, 2002, to October 31, 2003. Plaintiff's first position was a part-time position at the Board's Farmington facility working only weekends. After one month of part-time employment, without having to interview for the position, she accepted a transfer to the Rifle Range Facility and became a full-time employee with benefits.

At the Rifle Range Facility, Ms. Cynthia Simmons ("Simmons"), the home coordinator, was Plaintiff's supervisor. Lavonia Dixon ("Dixon") trained Plaintiff on the proper procedures required by Simmons, including how to use MAR, a medication record maintained by the Defendant to record medications administered to each client. Dixon also trained Plaintiff on "training objectives," a procedure to help the residents work on and accomplish certain objectives each month. Plaintiff claims that she was told to backdate documentation in order to make it appear the training was done throughout the month.

During the course of her employment, Defendant did not discipline Plaintiff; indeed she received two evaluations that reflected a satisfactory rating. Plaintiff wrote a letter to the Board's executive

director protesting the evaluations because she considered herself to have worked at an above average level.

After several months of employment at the Rifle Range Facility, Plaintiff met with representatives of the Board to discuss her concerns regarding the management of the Rifle Range Facility. Specifically, Plaintiff expressed her concerns with the management's requiring the backdating of documents and the employees' improperly signing off on medical charts. Defendant assured Plaintiff that an investigation was conducted and that Plaintiff had received a copy of the Report. Plaintiff claims that she did not receive a copy of the Report, and that the conditions of which she complained still existed following her complaints.

After making her complaints, Plaintiff asserts that Defendant, through her supervisors and co-workers, retaliated against her by creating a hostile work environment. Plaintiff asserts that Simmons did not provide timely responses to requests for days off, timely refunds for expenses, and did not provide remedies between the shifts as promised. In order to escape the hostility, Plaintiff applied for transfers to several available positions in other facilities. In September 2003, Plaintiff requested a transfer to a teacher's assistant position. The Board interviewed Plaintiff, but Plaintiff was not offered the position. On October 7, Plaintiff applied for a transfer to a residential care specialist position at the Board's Secessionville location. On October 9, 2003, Plaintiff sent a letter to the executive Director of the Board, stating that while she "could very easily stay at Rifle Range Road and continue [her] employment as [she has] been doing," she would "resign from [her] position as a Residential Specialist on 10/31/03" if she is not granted the transfer to the Secessionville position. Plaintiff's transfer request was not approved.

After submitting her resignation, Plaintiff attempted to appeal to the board regarding her forced termination due to the hostile work environment. Defendant denied the appeal stating that Plaintiff had voluntarily resigned.

On April 29, 2003, Plaintiff filed a complaint against her former employer in Charleston County Court of Common Pleas. Plaintiff alleged causes of action for (1) breach of contract, (2) wrongful retention of wages in violation of S.C.Code 41–10–80, (3) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and (4) constructive termination in violation of public policy. On July 8, 2005, Defendant removed this action to this court, as federal district courts have original jurisdiction over FLSA claims under 28 U.S.C. § 1331. Defendant now moves for summary judgment, claiming that Plaintiff has failed to raise a genuine issue of material fact regarding any of her asserted causes of action.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, af-

ter adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

## ANALYSIS

### A. Plaintiff's Breach of Contract Claims

In this case, it is uncontested that Plaintiff and Defendant never entered into a formal employment contract; however, Plaintiff asserts that the employee handbook contractually altered the at-will relationship and that Defendant was bound to follow the procedures as described therein. Specifically, Plaintiff contends that the anti-harassment, progressive discipline, and transfer provisions of the handbook constituted promises, and that she was denied the protections of these provisions in violation of these promises. Defendant denies that the handbook contained any promises binding it to follow any specific procedures and that the handbook expressly and conspicuously disclaimed that it formed any such contract. As such,

Defendant argues that Plaintiff's breach of contract claims fail as a matter of law.

 The issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference. *Hessenthaler v. Tri–County Sister Help, Inc.,* 365 S.C. 101, 108–109, 616 S.E.2d 694, 697 (S.C.2005); *Williams v. Riedman,* 339 S.C. 251, 259, 529 S.E.2d 28, 32 (Ct.App.2000). But a " 'court should intervene to resolve the handbook issue as a matter of law . . . if the handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist.'" *Id.* (quoting Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers,* 13 Indus. Rel. L.J. 326, 375–76 (1991–92)); *cf. Horton v. Darby Elec. Co.,* 360 S.C. 58, 67–68, 599 S.E.2d 456, 461 (2004) (holding, as a matter of law, that a handbook containing conspicuous disclaimers and a non-mandatory discipline procedure did not alter at-will status). If an employer wishes to issue an employee handbook or manual without being bound by it and with a desire to maintain the at-will employment relationship, the employer must insert a conspicuous disclaimer into the handbook. *Small v. Springs Indus., Inc.,* 292 S.C. 481, 485, 357 S.E.2d 452, 455 (1987). The Supreme Court of South Carolina has held that a disclaimer appearing in bold, capitalized letters, in a prominent position, is conspicuous.[1] *Hessenthaler v. Tri–County Sister Help, Inc.,* 365 S.C. 101, 108, 616 S.E.2d 694, 697 (2005); *Marr v. City of*

---

**1.** The South Carolina General Assembly recently passed legislation requiring disclaimers to be in underlined, capitalized letters, appearing on the first page of the handbook, and signed by the employee. S.C.Code Ann. § 41–1–110 (Supp.2004). This requirement does not apply to the disclaimer in question,

however, as it predates this legislation; nonetheless, the court notes that the disclaimer fulfills nearly all requirements of this new legislation. It is in all capital letters, bolded, on the first page, and is also directly above the signature block provided at the end of the handbook.

*Columbia,* 307 S.C. 545, 547, 416 S.E.2d 615, 616 (1992); *cf. Johnson v. First Carolina Fin. Corp.,* 305 S.C. 556, 409 S.E.2d 804 (Ct.App.1991) (finding disclaimer appearing in all-capitalized letters, in a prominent position, conspicuous). In most instances, however, summary judgment is inappropriate when a handbook contains *both* a disclaimer and promises. *Fleming v. Borden,* 316 S.C. 452, 464, 450 S.E.2d 589, 596 (1994). The court therefore considers whether the subject handbook contained conspicuous disclaimers and any promises.

The handbook at issue in this case contains several bold-faced disclaimers in all capital letters. On the first page, the handbook states,

> NOTHING IN THIS HANDBOOK IS INTENDED TO IMPLY OR CREATE AN EMPLOYMENT RELATIONSHIP OR CONTRACT FOR EMPLOYMENT. ALL EMPLOYMENT IS AT–WILL AND CAN BE TERMINATED AT ANY TIME, WITH OR WITHOUT NOTICE, FOR ANY REASON.

> THE AGENCY HAS THE RIGHT TO MODIFY THE POLICIES AT ANY TIME AT ITS SOLE DISCRETION; AND NO ONE EXCEPT THE EXECUTIVE DIRECTOR HAS THE AUTHORITY TO WAIVE ANY OF THE PROVISIONS OF THE POLICIES.

■ On page 37, in the section regarding "Disciplinary Procedures and Actions," the handbook warns, "**THE DISCIPLINARY PROCESS *DOES NOT MODIFY THE STATUS OF EMPLOYEES–AT–WILL* OR IN ANY WAY RESTRICT THE AGENCY'S RIGHT TO BYPASS THE DISCIPLINARY PROCESS.**" And, finally, on the last page, directly above the line upon which employees are required to sign, the handbook reiterates,

"[t]his handbook and the policies from which it is derived are simply guidelines *NOT* a contract of employment." Plaintiff signed the acknowledgment section appearing in the back of the handbook, by which she indicated that she understood that "this is not a contract of employment but that [her] employment is as an 'employee-at-will;' and that policies, procedures, and/or benefits may be changed at any time." Because the disclaimers appear on the first and last pages of the handbook and in a relevant section of the handbook regarding Employee Disciplinary Procedures, and because these disclaimers are in bold, capitalized letters, and because Plaintiff's signature indicates her understanding of the disclaimers, the court holds that the disclaimers are conspicuous as a matter of law.

■ Finding the disclaimers to be conspicuous as a matter of law, the court next considers whether the handbook contains any promises. To be enforceable in contract, general policy statements must be definitive in nature and promising specific treatment in specific situations. *See, e.g., Ex parte Amoco Fabrics & Fiber Co.,* 729 So.2d 336, 339 (Ala.1998) ("to become a binding promise, the language used in the handbook ... must be specific enough to constitute an actual offer rather than a mere general statement of policy") (internal quotations omitted); *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 665 A.2d 580, 584 (1995) ("[o]nly those policies which are definitive in form, communicated to the employees, and demonstrate an objective manifestation of the employer's intent to bind itself will be enforced"); *cf. Bookman v. Shakespeare Co.,* 314 S.C. 146, 148–49, 442 S.E.2d 183, 184 (Ct.App.1994) (finding that a sexual harassment policy contained a promise to "promptly and carefully" investigate complaints of sexual harassment). The handbook provisions to which Plaintiff refers in her Complaint do

not contain promises. The anti-harassment provision [2], the progressive discipline provision [3], and the transfer provision,[4] all emphasize the Board's ability to exercise its discretion and contains no mandatory provisions or promises. These provisions are therefore only general policy statements that do not create an expectation that employment is guaranteed for any specific duration or that the employer is bound to follow a particular process. Therefore, the court holds that the handbook did not contain promises enforceable in contract.

■ Because the Board's employment handbook contained several conspicuous disclaimers, of which Plaintiff had notice, and because the handbook did not contain any promissory language altering the employer's obligations, the court holds that the handbook did not constitute a contract. Accordingly, Plaintiff's breach of contract claims are without merit and the court grants Defendant's motion.

### B. Plaintiff's South Carolina Payment of Wages Act and Fair Labor Standards Act

■ Plaintiff alleges that, because "one of her paychecks was shorted $25.00," the Board violated the South Carolina Payment of Wages Act and the Fair Labor

---

2. "**Discrimination/Harassment**–Any staff member/resident/individual who feels that he/she has been discriminated against or sexually harassed should follow procedures as established by the *Employee Grievance Procedure.* If necessary, the Executive Director will investigate the complaint and report it to the appropriate federal office so that the complaint may be resolved." (Handbook p. 8)

3. **Disciplinary Procedures and Actions**–All employees are expected to comply with the Agency's standards of behavior and performance and any non-compliance with these standards must be remedied. The intent of the disciplinary process is to assist and promote improved employee performance rather than to punish.

 Instances can arise when an employee must be reprimanded, suspended, or discharged, with or without notice. Although "progressive discipline" is frequently applied, the DBCC will administer discipline according to the situation and the DBCC's needs.

 Disciplinary action may include informal counseling, oral reprimand, written reprimand, suspension without pay, probation, demotion, or dismissal. The disciplinary action which is appropriate for any particular misconduct depends upon a number of factors including but not limited to the seriousness of the misconduct, and the impact of the misconduct on others. *The disciplinary action which is administered for particular act or acts of misconduct rests in the sole discretion of DBCC.*

Offenses that may result in immediate discharge of the employee include, but are not limited to, the following. . . . The Director of Human Resources should review and approve all recommendations for termination before any final action is taken. Employees who believe that they have been disciplined too severely or who question the reason for discipline should use the grievance procedures. **The Disciplinary Process** *DOES NOT MODIFY THE STATUS OF EMPLOYEES–AT–WILL* **OR IN ANY WAY RESTRICT THE AGENCY'S RIGHT TO BYPASS THE DISCIPLINARY PROCESS.** (Handbook p. 36–7, emphasis in original.)

4. "**Transfers** The Agency may at its discretion initiate or approve employee job promotions or transfers from one job to another or from one location to another. The Agency may require employees to make either a temporary or long-term job transfer in order to accommodate the Agency business needs. Employees may request a voluntary job transfer or promotion. To be eligible for a voluntary transfer, employees must meet the requirements of the new position, must have held their current position for at least six months, must have a satisfactory performance record, and must have no adverse disciplinary actions during the same time period. Employees who want to initiate a transfer must complete a Transfer Request Form obtained from the Human Resources Office." (Handbook at 17.)

Standards Act. (Response to Mot. for Sum. Jud. at 10.) Plaintiff has admitted that she has no evidence to support this allegation,[5] but claims that her bare contention that the paycheck was short is sufficient to constitute a genuine issue of material fact.[6]

The court is mindful that, in considering a motion for summary judgment, it must construe all evidence in the light most favorable to Plaintiff, as the non-moving party; however, Plaintiff bears the burden of making a showing sufficient to establish the existence of every element essential to her claims. She may not rest upon the mere allegations or denials of her pleading, but her response to the motion for summary judgment, by affidavits or other evidence, must set forth *specific* facts showing that there is a genuine issue for trial. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir.1976) (conclusory allegations insufficient to avoid summary judgment); *Zoby v. American Fidelity Co.*, 242 F.2d 76, 80 (4th Cir.1957) ("(T)o resist a motion for summary judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute.... His bare contention that the issue is disputable will not suffice."). Because Plaintiff fails to present any evidence of the allegedly short paycheck, the court has no choice but to grant Defendant's motion.

## C. Constructive Discharge in Violation of Public Policy

Although the Board did not terminate Plaintiff's employment, Plaintiff claims that Defendant intentionally forced her to resign by not correcting her "intolerable working conditions." Defendant asserts that this claim must be dismissed because the record does not contain the evidence necessary to support a constructive discharge claim.

■ An employee is entitled to relief absent a formal discharge, "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186 –187 (4th Cir.2004). To demonstrate constructive discharge in this case, Plaintiff must allege and prove two elements: (1) the Board's deliberate intent to force Plaintiff to resign, and (2) the objective intolerability of the working conditions. *See id.; Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir.2001). As the Fourth Circuit explained in *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir.1993):

> An employee may not be unreasonably sensitive to his working environment. Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

---

**5.** In a deposition, Plaintiff replied in the negative when asked, "And do you have any records to support the fact that you think on one of your paychecks you were paid twenty to twenty-five dollars less than you should have?" Again, when asked, "you don't know when and you don't have any evidence to show that you were short?," Plaintiff respond- ed, "No, I don't have, I don't have, no." (Plaintiff's Depo. at 83–87.)

**6.** Plaintiff refers to the transcript of her own testimony during her SC Employment Security Commission hearing in which she states that one of her paychecks was "almost $25.00 short." She claims that this testimony constitutes "evidence" of her claim.

The Fourth Circuit has also held that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir.2004) (citing *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994)).

 As an initial matter, the working conditions at the Rifle Range Facility as described by Plaintiff cannot reasonably be considered intolerable. *Honor,* 383 F.3d at 187. According to Plaintiff, her supervisor created a hostile work environment by failing to promptly respond to Plaintiff's requests for days off, by not providing timely refunds for expenses, by failing to provide "remedies between shifts which it promised," and by "constantly counsel[ing][her] regarding her employment and her performance." (Opp. to Mot. For Sum. Jud. at 3 & 12.) Plaintiff sought a transfer to another facility to avoid the difficulties she had with her supervisor, but her requests for a transfer were denied. These alleged acts of hostility, even considered in the light most favorable to Plaintiff, are minor and cannot support a finding of an objectively intolerable work environment. Accordingly, the court finds that Plaintiff fails to describe "conditions so intolerable as to compel the reasonable person to resign." *Williams,* 370 F.3d at 434.

 Even if Plaintiff could show that the conditions at the Rifle Range Facility were intolerable, there is no evidence that the Board deliberately created these conditions to pressure Plaintiff to resign. There is no evidence, direct or circumstantial, that Simmons' statements or allegedly hostile actions were part of "a calculated effort to pressure [Plaintiff] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by [her] co-workers." *James v.*

*Booz–Allen & Hamilton, Inc.,* 368 F.3d 371 (4th Cir.2004) (quoting *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985)). Although Plaintiff's motivation to look for a transfer to another facility may have been based on her feeling of being unwelcome at the Rifle Range facility, there is no evidence that those conditions were intentionally created to force Plaintiff out because of her complaints or otherwise. Finally, beyond all of this, as discussed above, Plaintiff did not part from the Board under circumstances that a reasonable jury could find that she was forced to resign. Her resignation letter, in which she states that she "could very easily stay at Rifle Range Road" but has decided to "move forward and seek other options," forecloses any contrary conclusion. *See Honor,* 383 F.3d at 188.

 Because Plaintiff has not described an objectively intolerable working condition, and because she presents no evidence that the Board intended to force her resignation, the court concludes that a reasonable jury could not find that Plaintiff was constructively discharged. *Honor,* 383 F.3d at 188.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant Disability Board of Charleston County's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**