674 S.E.2d 181

**AMERICAN LEGION POST 15, American Legion Post 17, and Steve Johnson, Respondents,**

v.

**HORRY COUNTY, Appellant.**

**No. 4509.**

Court of Appeals of South Carolina.

Heard Dec. 12, 2008.
Decided Feb. 25, 2009.

Emma Ruth Brittain and Charles B. Jordan, Jr., both of Myrtle Beach, for Appellant.

Kenneth R. Young, Jr., of Sumter, for Respondents.

PER CURIAM:

Horry County appeals the circuit court's order requiring the County to refund admissions fees remitted by American Legion Post 15, American Legion Post 17, and Steve Johnson. We affirm in part, reverse in part, and remand.

## FACTS

American Legion Post 15 and American Legion Post 17 (the Posts) are non-profit tax-exempt corporations. Johnson is employed by the Posts as the administrator of the Posts' bingo games. In 1996, the South Carolina Legislature enacted the Bingo Tax Act of 1996 (the Act). S.C.Code Ann. §§ 12–21–3910 to –4300 (2000 & Supp.2008). The Act governs the

entrance fees and sale of bingo cards. S.C.Code Ann. § 12–21–4030 (2000).

The Act imposes a tax upon paid admissions to "places of amusement" within South Carolina. S.C.Code Ann. § 12–21–2420 (2000 & Supp.2008). However, section 12–21–4270 of the Act provides: "Each licensed nonprofit organization or promoter, in the name of a licensed organization, may obtain bingo cards.... **The sale of bingo cards and entrance fees provided by Section 12–21–4030 are not subject to the admissions tax provided by Section 12–21–2420.**" S.C.Code Ann. § 12–21–4270 (Supp.2008) (emphasis added).

In 1996, the Horry County Council adopted the Horry County Hospitality Fee Ordinance, which similarly imposed a service charge upon entrance fees paid at places of amusement within the County. *See* Horry County, S.C., Ordinances 105–96, § 19–6(a)(2) (1996). This section applies to places of amusement that the admissions tax imposed by section 12–21–2420 applies under the South Carolina Code. *Id.* The Ordinance further mandates the payment of the fee "shall be the liability of the consumer" and "shall be collected by the provider of the services...." *Id.* at § 19–6(b). The County required the Posts to remit payments effective January 1, 1997, with the first remittances due to the County by February 20, 1997.

Johnson's daughter, Christie Johnson Brunson, operates the bingo operations for the Posts. Brunson testified the Posts collected the admissions charges pursuant to state law for each person who entered to play bingo.[1] Brunson testified the County notified her the Posts would be charged the hospitality fee. She began forwarding the fees to the County but did not collect the fees from the bingo customers, instead remitting the amount from the Posts' proceeds. Between 1997 and 2001, the Posts paid $34,523.94 to the County as admissions fees. Brunson believed the fee should not be charged for bingo; therefore, she paid several of the Posts' first remittances "under protest."

In November of 2001, the County contacted Brunson and told her to cease remitting the County hospitality fee because

---

1. *See* S.C.Code Ann. § 12–21–4190 (2000) (providing for remittance of a percentage of the face value of bingo cards sold).

the ordinance did not apply to the Posts' bingo establishments. As reflected in the County's file, Brunson asked for a refund on January 10, 2002. Brunson testified she was told by Roddy Dickerson, the Assistant County Treasurer,[2] that he would look into the possibility of refunding the payments. Dickerson advised Brunson to seek a refund by letter to the County. By undated letter, Brunson requested the refund. Brunson testified this letter was sent in January of 2002.

In response, Brunson received an interoffice memo from the Horry County Attorney to Dickerson dated November 3, 2003.[3] The memo noted that Horry County charged hospitality fees on bingo between 1997 and 2001, but in 2001 determined it was inappropriate to charge the hospitality fees, and in March of 2003 the County was requested to refund the Posts' payments. The County Attorney counseled that the Posts may be barred from a refund in part or full by the application of the statute of limitations. The County Attorney concluded any refund would be improper regardless of the statute of limitations because the right to a refund of erroneously collected taxes is restricted to those upon whom the tax liability is imposed.

In October of 2004, the Posts and Johnson filed this action. The County answered, raising, *inter alia,* the statute of limitations and standing. After a hearing, the trial court ordered the County to refund the amount remitted by the Posts and denied the County's motion for reconsideration. The County appealed.

## STANDARD OF REVIEW

An action to recover a tax erroneously paid is an action at law but equitable in its function. *Stone v. White,* 301 U.S. 532, 534, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). Such an action is governed by the equitable principles that underlie an action to avoid unjust enrichment. *Id.; see Hollingsworth on Wheels, Inc. v. Greenville County Treasurer,* 276 S.C. 314, 317, 278 S.E.2d 340, 342 (1981) (applying standard of review of

---

2. By the time of the hearing, Dickerson was the County Treasurer.

3. It is unclear if Brunson received this directly or from her attorney. The memo states Brunson first requested the refund in March of 2003.

action in equity to action for refund of property taxes). In applying equity, this court can find facts in accordance with its own view of the preponderance of the evidence. *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).

## LAW/ANALYSIS

The County argues the Posts lack standing to seek a refund and the Posts' action is barred by a three-year statute of limitations.

### A. Standing

■ Relying on *Furman University v. Livingston*, 244 S.C. 200, 136 S.E.2d 254 (1964), the County argues the Posts lacked standing to seek a refund because they were not the parties responsible for the payment of the hospitality fees. We disagree.

In *Furman*, the University collected admission taxes from ticket-purchasers to athletic events and remitted them to the State under protest. *Id.* at 201, 136 S.E.2d at 254–55. The University filed an action alleging its athletic events were exempt from the admission tax statute and seeking recovery of the taxes remitted. *Id.* at 202, 136 S.E.2d at 255. Our Supreme Court found the right to sue for erroneously paid taxes is restricted to those on whom the tax liability is imposed. *Id.* at 204, 136 S.E.2d at 256. "A withholding or collection agent who has reimbursed himself by withholding or collecting the amount of the taxes from a third person is not entitled to a refund of such taxes. In such case, the right to a refund is in the 'taxpayer' from whom the funds were withheld or collected." *Id.* The court concluded the University was not the taxpayer under the facts of that case and therefore had no standing to seek a refund. *Id.* at 205, 136 S.E.2d at 256–57.

Like the trial court, we find we find *Furman* is distinguishable. Although section 19–6 provides the admissions fee is the liability of the consumer, the only evidence in the record is that the Posts paid the fees rather than collecting them from the consumers and was therefore the "taxpayer" under *Furman*. Accordingly, we affirm the trial court's finding the Posts had standing to seek a refund.

## B. Statute of Limitations

The County next argues the Posts' action is barred by a three-year statute of limitations. We agree.

Section 12–54–85(F)(1) of the South Carolina Code provides: "claims for credit or refund must be filed within three years from the time the return was filed, or two years from the date the tax was paid, whichever is later." S.C.Code Ann. § 12–54–85(F)(1) (Supp.2008). The statute further states: "A credit or refund may not be made after the expiration of the period of limitation ... unless the claim for credit or refund is filed by the taxpayer or determined to be due by the department within that period." *Id.*

South Carolina Code Section 12–60–2150(G) provides:

Even if a taxpayer has not filed a claim for refund, where no question of fact or law is involved, and it appears from the record that money has been erroneously or illegally collected from a taxpayer or other person under a mistake of fact or law, the department may ..., within the period specified in Section 12–54–85 and upon making a record in writing of its reasons, order a refund to the taxpayer or other person.

*Id.* at § 12–60–2150(G) (2000).

In its first order, the trial court found Brunson's letter requesting the refund was an appeal of the imposition of the tax and tolled any statute of limitations. In its subsequent order denying the County's motion for reconsideration, the court found the County was estopped from raising the statute of limitations as a defense. The court found the County's conduct induced the Posts into believing a lawsuit was unnecessary.

### 1. Equitable Tolling

The County argues the court erred in finding Brunson's letter tolled the statute of limitations. We agree.

"South Carolina has rarely applied the doctrine of equitable tolling to halt the running of the statute of limitations. Equitable tolling is reserved for extraordinary circumstances." *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.,* 377 S.C. 217, 230, 659 S.E.2d 213, 219 (Ct.App.2008), *cert. granted,* (Nov. 20, 2008). The court in *Hooper* stated:

The time requirements in lawsuits between private litigants are customarily subject to equitable tolling if such tolling is necessary to prevent unfairness to a diligent plaintiff. However, equitable tolling, which allows a plaintiff to initiate an action beyond the statute of limitations deadline, is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights, or, in other words, if the relevant facts present sufficiently rare and exceptional circumstances that would warrant application of the doctrine.

Equitable tolling has been deemed available where—

—extraordinary circumstances prevented the plaintiff from filing despite his or her diligence.

—the plaintiff actively pursued his or her judicial remedies by filing a defective pleading during the statutory period or the claimant has been induced or tricked by the defendant's misconduct into allowing the filing deadline to pass.

—the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his or her claim.

It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. However, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation.

*Id.* at 231–32, 659 S.E.2d at 220–21, quoting 51 Am.Jur.2d *Limitation of Actions* § 174 (2007). In this case, we find no extraordinary circumstances or active misleading by the County to warrant tolling the statutory period of limitations. Nothing prevented the Posts from learning of the governing statutes, as we find is required for due diligence. *See Snell v. Columbia Gun Exch., Inc.,* 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981) (defining reasonable diligence as requiring an injured party to act with promptness where circumstances of an injury would put a person of common knowledge and experience on notice that some claim may exist). Accordingly, we find the trial court erred in finding Brunson's letter tolled the statute of limitations.

## 2. Estoppel

■ Lastly, the County argues the trial court erred in finding the County was estopped from raising the statute of limitations. We agree.

■ A defendant may be estopped from claiming the statute of limitations as a defense if delay in bringing the action was induced by the defendant's conduct. *Wiggins v. Edwards*, 314 S.C. 126, 130, 442 S.E.2d 169, 171 (1994). The defendant's conduct may consist of an express representation or conduct suggesting a lawsuit is not necessary. *Id.* Estoppel may apply against a government agency and the party asserting estoppel against the government must prove: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) justifiable reliance upon the government's conduct; and (3) a prejudicial change in position. *Morgan v. S.C. Budget & Control Bd.*, 377 S.C. 313, 320, 659 S.E.2d 263, 267 (Ct.App.2008). Citizens are presumed to know the law and are charged with exercising reasonable care to protect their interests. *Id.* Estoppel will not lie against a governmental entity when a government employee gives erroneous information in contradiction of statute. *Id.* at 319, 659 S.E.2d at 267. "Simply stated, equity follows the law." *Id.*

We find the Posts do not meet the elements necessary to estop the County from raising the statute of limitations. The Posts are presumed to know the law and may not rely on contrary conduct by the County in contradiction of a statute. Accordingly, we find the trial court erred in finding the County estopped from relying on the statute of limitations.

### CONCLUSION

We affirm the trial court's finding on the issue of standing. We reverse the trial court's rulings on tolling and estoppel. However, it appears the Posts' cause of action was timely for at least two payments made by the Posts. Accordingly, we remand this action to the trial court to determine the refund due to the Posts.

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

HEARN, C.J., and SHORT and KONDUROS, JJ. concur.