738 S.E.2d 255

**Kirby L. BISHOP, Herman G. Boney, Richard H. Brown, Michael D. Catt, Basilides F. Cruz, Robert B. Dozier, Joseph A. Floyd, Sr., Arthur C. Gillam, III, Alma C. Hill, Barry N. Martin, William J. Meyer, Charles F. Morris, Sr., and Joseph A. Smith, Plaintiffs,**

**Of whom Basilides F. Cruz, Joseph A. Floyd, Sr., Arthur C. Gillam, III, Alma C. Hill, Barry N. Martin, Charles F. Morris, Sr., and Joseph A. Smith are, Appellants,**

**v.**

**CITY OF COLUMBIA, Respondent.**

**Appellate Case No. 2010–176227.**

**No. 5077.**

Court of Appeals of South Carolina.

Heard March 28, 2012.

Decided Jan. 23, 2013.

Rehearing Denied Feb. 22, 2013.

Nancy Bloodgood, of Foster Law Firm, LLC, of Charleston, for Appellants.

W. Allen Nickles, III, of Nickels Law Firm, LLC, and Matthew A. Nickles, of Walker & Reibold, LLC, both of Columbia, for Respondent.

WILLIAMS, J.

On appeal, Basilides F. Cruz, Joseph A. Floyd, Sr., Arthur C. Gillam, III, Alma C. Hill, Barry N. Martin, Charles F. Morris, and Joseph A. Smith (collectively, Retirees) claim the circuit court erred in granting the City of Columbia's (the City) motion for summary judgment on Retirees' claims for continuing free health insurance under claims for breach of contract, promissory estoppel, and equitable estoppel. We affirm in part and reverse in part.

**FACTS/PROCEDURAL HISTORY**

Retirees are a group of retired firefighters and police officers who each worked at least twenty years for the City of Columbia. Retirees elected to have group health insurance provided by the City through BlueCross BlueShield of South Carolina. Prior to July 1, 2009, the City paid all costs required to fund the group health insurance for employees and retirees. Retirees received newsletters stating retiree health insurance was free and were told by the City's human resources department that retiree health insurance would be at no cost to the retiree.

Retirees received an employee handbook and an insurance benefits booklet each year they were employed by the City. Under the heading "Employee Benefits," the employee handbook provided, "All employees who retire at age 65 or later . . . will be kept under the City's group coverage with the City making a cash contribution." The employee handbook also outlined a policy for employees who retire with twenty years or more of continuous service, stating, "Currently the City will, at no cost to eligible employees, continue health coverage for eligible employees."

The employee handbook's cover page stated in large font that the employee handbook was "**(NOT A CONTRACT).**" The next page of the employee handbook was dedicated to an "*IMPORTANT NOTICE*," which stated, "**NOTHING IN THIS HANDBOOK . . . SHALL BE DEEMED TO CONSTITUTE A CONTRACT OF EMPLOYMENT.**" The important notice further noted, "The City reserves the right to revise, supplement, or rescind any policies or portion of the employee handbook, from time to time, as it deems appropriate in its sole and absolute discretion."

The insurance benefits booklet provided to employees and Retirees each year stated health insurance was "not just fringe benefits, but because the City pays the vast majority of the cost for [Retirees], they represent a significant cost of compensation far beyond your paycheck."

Retirees stated they relied on assurances made by supervisors that retiree health insurance would continue to be free, and they stated they accepted lesser salaries while employed by the City because of the City's policy of providing free health insurance to retirees.

In planning for the 2009–2010 budget, the City considered a number of cost-saving measures, including shifting part of rising health care costs to participants in the City's group health insurance plan. Plan participants, including Retirees, received information, offered objections, and attended meetings concerning the proposed changes to the group health insurance policy. On May 6, 2009, the City Council unanimously voted to require financial contributions by employees and retirees for participation in the group health insurance plan beginning July 1, 2009. Each of the Retirees left employment with the City before July 1, 2009.

On August 10, 2009, thirteen retirees sued the City seeking: (1) reimbursement of all premiums paid since July 1, 2009; (2) individual health insurance on the same terms as provided on the date of retirement prior to July 1, 2009; (3) guarantee of no future reductions in benefits for life; and (4) guarantee of no charges for health benefits for life. The Retirees alleged four causes of action: (1) breach of contract; (2) promissory estoppel; (3) violation of the South Carolina Unfair Trade Practices Act; and (4) declaratory judgment. With the consent of the City, the Retirees amended their complaint to assert equitable estoppel as a cause of action. The City filed a motion to dismiss, and the circuit court dismissed Retirees' unfair trade practices claim but allowed the remaining actions to proceed. The City timely filed a motion for reconsideration, or in the alternative, a motion to stay pending appeal. The circuit court denied both of the City's motions. The City made a summary judgment motion on May 6, 2010. After a hearing, the circuit court granted the City summary judgment on Retirees' breach of contract, promissory estoppel, and

equitable estoppel causes of action.[1] Seven of the thirteen retirees bring this appeal.

## STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court under Rule 56(c), SCRCP." *Bovain v. Canal Ins.*, 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009). Rule 56(c) provides a circuit court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Rule 56(c), SCRCP). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009).

"A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006). In *Hancock*, our supreme court clarified that the level of evidence required to defeat a motion for summary judgment

---

1. The circuit court found Retirees' claims were not actionable in contract because: (1) Retirees were at-will employees and the City promised Retirees unvested fringe benefits, rather than compensation; (2) the City could not be legally bound by promises and representations made by its employees; (3) the City's handbooks and benefits booklets used present tense language that did not make permanent guarantees to support a contractual right; (4) any contract for future benefits would violate public policy because it would bind future city councils in the performance of their governmental functions; and (5) the benefits are governed by the contract between the City and BlueCross BlueShield of South Carolina. The court found Retirees' claims were not actionable in promissory or equitable estoppel because the actions and statements of the City's employees could not bind a municipality in the council—manager form of government; Retirees are deemed to know this limitation; and Retirees therefore could not reasonably rely on any of the alleged promises or representations in deciding to work for the City.

is dependent upon the non-moving party's burden of proof at trial. 381 S.C. at 330–31, 673 S.E.2d at 803.

## LAW/ANALYSIS

### I. Breach of Contract

Retirees argue the circuit court erred in granting summary judgment on their cause of action for breach of contract because the record establishes the City breached the contract they had with Retirees. We disagree.

Specifically, Retirees argue the City offered to pay the cost of the retiree health insurance through the employee handbook, insurance benefits booklet, and statements made by City representatives. Retirees contend they accepted the offer by complete performance, working for the City for over twenty years. Further, Retirees argue working for the City for more than twenty years constituted valid consideration for the contract because they could have earned higher salaries from other employers.

The City argues the employee handbook, insurance benefits booklet, and verbal representations do not create a unilateral contract for continuing free health insurance. We agree with the City and address each assertion in turn.

### A. Employee Handbook

Retirees argue the employee handbook created a unilateral contract. We disagree.

A unilateral contract has three elements: (1) a specific offer; (2) communication of the offer to the employee; and (3) performance of job duties in reliance on the offer. *Prescott v. Farmers Tel. Co-op., Inc.*, 335 S.C. 330, 336, 516 S.E.2d 923, 926 (1999). "The issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference." *Watkins v. Disabilities Bd. of Charleston Cnty.*, 444 F.Supp.2d 510, 514 (D.S.C.2006). However, a court should resolve whether the employee handbook constitutes a contract as a matter of law when the employee handbook's policies and disclaimers, taken together, establish that an enforceable promise does or does not exist. *Id.* An

employee handbook forms a contract when: (1) the handbook provisions and procedures in question apply to the employee; (2) the handbook sets out procedures binding on the employer; and (3) the handbook does not contain a conspicuous and appropriate disclaimer. *Grant v. Mount Vernon Mills, Inc.*, 370 S.C. 138, 146, 634 S.E.2d 15, 20 (Ct.App.2006).

Here, we find the employee handbooks applied to the Retirees during their employment, and the employee handbooks set out a policy of continuing free health insurance. Specifically, the 1987 version stated, "The City of Columbia hereby declares as a matter of policy that the City government ... can better serve the public by administering ... a personnel program which provides for and incorporates the following: ... 5. Providing a program of extended benefits including ... retirement benefits." Later versions of the handbook added the following: "Currently, the City will, at no cost to eligible employees, continue health coverage for eligible employees in accordance with the following" eligibility requirements. We hold a contract does not exist.

In *Marr v. City of Columbia*, 307 S.C. 545, 547, 416 S.E.2d 615, 616 (1992), our supreme court held an employee handbook did not form a contract when the employee handbook had a large disclaimer on the front cover stating, "Not a Contract"; there was no evidence the employee handbook was treated as a contract notwithstanding the disclaimer; and there was no evidence the parties waived the disclaimer. Further in *Marr*, the next page of the employee handbook contained an "IMPORTANT NOTICE" that explicitly stated nothing in the handbook should be deemed to constitute a contract. *Id.* The court went on to state the following:

> If an employer wishes to issue policies, manuals, or bulletins as purely advisory statements with no intent of being bound by them and with a desire to continue under the employment at will policy, he certainly is free to do so. This could be accomplished merely by inserting a conspicuous disclaimer or provision into the written document.... Where, as here, the employer conspicuously disclaims the handbook as a contract and the parties have not waived the disclaimer, summary judgment for the employer on the issue of wheth-

er the handbook forms an employment contract is appropriate.

*Id.*

Since at least 1987 the employee handbooks contained the same disclaimer as the employee handbook in *Marr*, stating in large font, "Not a Contract" on the front cover of the employee handbooks. Further, the page after the cover page of the employee handbooks was devoted to an "IMPORTANT NOTICE," which provided in bold, conspicuous language: *"NOTHING IN THIS HANDBOOK OR IN ANY OF THE CITY'S PERSONNEL POLICIES SHALL BE DEEMED TO CONSTITUTE A CONTRACT OF EMPLOYMENT...."* Each Retiree signed numerous acknowledgment forms confirming the employee handbooks did not create a contract. We find the plain language of the employee handbook conspicuously disclaims the existence of a contract, and no evidence indicates the City treated the handbook as a contract despite the disclaimer.

Moreover, our current statutory framework supports the conclusion that the employee handbook contained a conspicuous disclaimer. On March 15, 2004, the South Carolina General Assembly passed section 41–1–110 of the South Carolina Code (Supp.2011), which states a handbook shall not create an employment contract if it is conspicuously disclaimed. Section 41–1–110 provides:

> It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, *shall not create an express or implied contract of employment if it is conspicuously disclaimed.* For purposes of this section, a disclaimer in a handbook or personnel manual must be in *underlined capital letters on the first page of the document and signed by the employee.* For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.

(emphasis added). Section 41–1–110 applies to all employee

handbooks issued by the City after June 30, 2004.[2] The only employee handbook provided in the record after June 30, 2004, is the employee handbook for 2005. As said before, the second page of the 2005 employee handbook contained a disclaimer stating, *"NOTHING IN THIS HANDBOOK OR IN ANY OF THE CITY'S PERSONNEL POLICIES SHALL BE DEEMED TO CONSTITUTE A CONTRACT OF EMPLOYMENT...."* This disclaimer was in all capital letters and was underlined. Additionally, beginning in 2004, Retirees signed a disclaimer contained in the employee handbook. Analogizing to the current statute, we find the disclaimer contained in the 2005 employee handbook was conspicuous as a matter of law, and the City did not waive the disclaimer. *See* § 41–1–110 ("[A] handbook ... issued by an employer ... shall not create an express or implied contract of employment if it is conspicuously disclaimed."); *Marr v. City of Columbia,* 307 S.C. 545, 547, 416 S.E.2d 615, 616 (1992) ("Where, as here, the employer conspicuously disclaims the handbook as a contract and the parties have not waived the disclaimer, summary judgment for the employer on the issue of whether the handbook forms an employment contract is appropriate."). Accordingly, the circuit court did not err in granting summary judgment on Retirees' breach of contract claim.

## B. Insurance Benefits Booklet

Retirees also argue the insurance benefits booklet created a unilateral contract for continuing free health insurance. We disagree.

We need not address whether performance in accordance with the insurance benefits booklet creates a unilateral contract because, even if it did, nowhere in the insurance benefits booklet does it provide that Retirees are entitled to continuing free health insurance. Under the title, "Retiree Participation Requirements (Must have 20 years of City Employment)," [3] the insurance benefit booklet states:

---

**2.** All other employee handbooks provided in the record are not subject to section 41–1–110 as they were issued prior to June 30, 2004.

**3.** The number of years of employment required to qualify for participation in the Retiree Program increased over the years from no time requirement, to ten years, to fifteen years, to twenty years.

> Health coverage is available to retiring employees and dependents if certain eligibility requirements are met.... An eligible participant must qualify for a City of Columbia Retirement Program, Fire Fighters Retirement, or Police Retirement. The participant must have worked for the city as a regular employee (at least 30 hours a week).... Retiree Health Coverage for this program will be paid under the benefits specified in this booklet until the attainment of 65. At age 65, the retiree must be enrolled in Medicare PART A and PART B under TITLE XVIII of the Social Security Act.

Accordingly, we find the circuit court did not err in finding the insurance benefits booklet did not create a contract for continuing free health insurance for Retirees.

## C. Representations by City Employees

■ Retirees argue representations made by City employees, such as supervisors and human resource employees, created enforceable unilateral contracts that were consummated by Retirees' continued employment with the City. We disagree.

The authority of the City's employees to contract with Retirees is limited to the authority that can be traced from those employees to the provisions of legislation from which they derive their power. *See* S.C.Code Ann. § 5–7–160 (2011) ("All powers of the municipality are vested in the council, except as otherwise provided by law, and the council shall provide for the exercise thereof and for the performance of all duties and obligations imposed on the municipality by law."); City of Columbia Ordinance § 1–2(a) (providing that whenever the ordinances require or authorize the head of a department or other officer of the city to do some act or perform some duty, the department head or other officer is authorized to designate, delegate and authorize subordinates to do the required act or perform the required duty unless the terms of the provision specifically designate otherwise); *cf.* 56 Am. Jur.2d Municipal Corporations, Etc. § 237 ("The general rule with regard to municipal officers is that they have only such powers as are expressly granted by ... sovereign authority or those which are necessarily to be implied from those granted.").

Here, the City has adopted the council—manager form of municipal government. City of Columbia Ordinance § 2-1. Under that form, the City's legislative and policy powers are vested in the City Council, and the salaries of the City's employees and officials must be approved by the City Council. S.C.Code Ann. § 5–13–30 (2011); City of Columbia Ordinance § 2–111. The City Manager is the chief executive officer and administrative head of the City. Thus, he is responsible for the administration of the municipality's affairs, including the employment of assistants to exercise such supervisory responsibilities over departments as he may delegate. S.C.Code Ann. § 5–13–90 (2011); City of Columbia Ordinance § 2–114(a)–(b). Further, each officer and department head has supervisory control of his department subject to the City Manager's direction and is authorized to delegate power to subordinates to perform their duties. City of Columbia Ordinance § 2–151(a)–(b); City of Columbia Ordinance § 2–125.

Therefore, to survive summary judgment on this argument, Retirees must provide a scintilla of evidence that the supervisors and human resource personnel who made the alleged promises had authority to create contracts for continuing free life insurance. Retirees have failed to do so. They have failed to show any action by the City Council or City Manager authorizing such contracts or granting the authority to these employees to enter the contract. They also failed to provide any evidence the supervisors and human resource employees who made the promises either had authority to enter these contracts directly or through the proper delegation of authority. Consequently, these alleged promises cannot bind the City under a theory of unilateral contract.[4]

---

4. The City also argues, and Retirees dispute, that summary judgment on the contract claims was appropriate because: (1) Retirees were "at-will" employees; (2) contracts for continuing free health insurance would violate public policy; and (3) Retirees could not have a permanent right to free lifetime health insurance under *Alston v. City of Camden,* 322 S.C. 38, 471 S.E.2d 174 (1996). Because we affirm the grant of summary judgment against the contract claims on other grounds, we need not address these arguments. *See Futch v. McAllister Towing Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## II. Promissory Estoppel and Equitable Estoppel

Retirees argue the circuit court erred in granting the City's motion for summary judgment on the promissory estoppel and equitable estoppel causes of action. Retirees maintain a genuine issue of material fact exists as to whether they reasonably relied on statements by City's representatives and written promises to provide continuing free health insurance after retirement. We agree in part.

As a general rule, to prove estoppel against a city, the relying party must prove: (1) lack of knowledge and of the means to obtain the knowledge of the truth as to the facts in question; (2) justifiable reliance upon the government's conduct; and (3) a prejudicial change in position. *S.C. Dep't of Transp. v. Horry Cnty.*, 391 S.C. 76, 83, 705 S.E.2d 21, 25 (2011). Similarly, the elements of promissory estoppel are: (1) a promise unambiguous in its terms; (2) the party to whom the promise is made reasonably relies on it; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made must sustain injury in reliance on the promise. *Woods v. State*, 314 S.C. 501, 505, 431 S.E.2d 260, 263 (Ct.App.1993).

### A. Written Promises

Retirees assert summary judgment was inappropriate because there is evidence they reasonably relied to their detriment on the City's written promises to provide free health insurance made in the employee handbook, insurance benefits booklet, and employee newsletters.[5] We agree in part.

Retirees argue they relied upon the employee handbook and benefits booklet in deciding to remain employed with the City each year until they reached twenty years' service. However, the employee handbook conspicuously disclaimed any binding promises, and the benefits booklet made no promises of continuing free health insurance at all. Therefore, Retirees cannot claim reasonable reliance on those materials, and the

---

5. We do not address the employee newsletters in light of our finding that summary judgment was not appropriate as a result of the City's oral promises and representations.

estoppel claims cannot survive summary judgment to the extent the claims are based on them.

## B. Statements by City Employees

■ Retirees argue summary judgment on estoppel was inappropriate because there is a genuine issue of fact as to whether they reasonable relied on promises and representations made by City employees. We agree.

■ The acts of a city official acting within the proper scope of his or her authority may give rise to estoppel against a municipality. *Charleston Cnty. v. Nat'l Advert. Co.*, 292 S.C. 416, 418, 357 S.E.2d 9, 10 (1987); *Landing Dev. Corp. v. City of Myrtle Beach*, 285 S.C. 216, 221, 329 S.E.2d 423, 426 (1985) ("Government agents, acting within the proper scope of their authority, can by their acts give rise to estoppel against a municipality."); *Abbeville Arms v. City of Abbeville*, 273 S.C. 491, 493–94, 257 S.E.2d 716, 718 (1979) (holding the city was not immune from an estoppel claim because a permit applicant bought property in reliance upon: (1) a zoning ordinance passed by the city council and a zoning map issued by the city pursuant to the ordinance that indicated the applicant's property was zoned for the applicant's intended purpose and (2) a statement by the city zoning administrator confirming what the ordinance and zoning map said). "The public cannot be estopped, however, by the unauthorized or erroneous conduct or statements of its officers or agents which have been relied on by a third party to his detriment." *S.C. Coastal Council v. Vogel*, 292 S.C. 449, 453, 357 S.E.2d 187, 189 (Ct.App.1987).

The City cites to a number of cases, arguing that they indicate Retirees could not rely upon the representation of City employees as to whether they were entitled to free health insurance for life. However, two of the cases do not involve governmental entities. *See McLaughlin v. Williams*, 379 S.C. 451, 457–58, 665 S.E.2d 667, 671 (Ct.App.2008); *West v. Gladney*, 341 S.C. 127, 134–35, 533 S.E.2d 334, 337–38 (Ct.App. 2000). Other cases involve civil rights claims alleging violations of the plaintiffs' constitutional rights as a result of official policy by the City. *See Stanley v. Kirkpatrick*, 357 S.C. 169, 176, 592 S.E.2d 296, 299 (2004); *Todd v. Smith*, 305 S.C. 227, 230–31, 407 S.E.2d 644, 646–47 (1991). Another case address-

es whether a public officer could sustain a contract claim. *See Piedmont Pub. Serv. Dist. v. Cowart,* 319 S.C. 124, 131, 459 S.E.2d 876, 880 (Ct.App.1995), *aff'd by* 324 S.C. 239, 478 S.E.2d 836 (1996). Further cases hold that estoppel will not lie against a governmental entity when the government's employee gives erroneous information in contradiction of a statute. *See Berkeley Elec. Co-op., Inc. v. Town of Mount Pleasant,* 308 S.C. 205, 210–11, 417 S.E.2d 579, 582–83 (1992); *Am. Legion Post 15 v. Horry County,* 381 S.C. 576, 584, 674 S.E.2d 181, 185 (Ct.App.2009); *Morgan v. S.C. Budget & Control Bd.,* 377 S.C. 313, 319–20, 659 S.E.2d 263, 267 (Ct.App. 2008). One also holds that a party cannot reasonably rely on government conduct to create a contract where the governmental actor purports to act pursuant to legislation that itself does not give authority to make the contract. *See Ahrens v. State,* 392 S.C. 340, 353–57, 709 S.E.2d 54, 61–63 (2011). Lastly, a case holds that the plaintiffs could not rely upon representations by a governmental employee where the employee explicitly said his assertions were subject to the school board's approval. *See Davis v. Greenwood School Dist.,* 365 S.C. 629, 634–35, 620 S.E.2d 65, 67–68 (2005).

None of the above cases answer whether a private party may rely on the representations of municipal employees for estoppel claims when the authority to make those representations *can* be traced back to the legislation that granted the municipal authority. *See Oswald v. Aiken Cnty.,* 281 S.C. 298, 303, 315 S.E.2d 146, 150 (Ct.App.1984) ("The County cannot escape liability to Oswald under a policy it had the general power to implement on the ground that the administrator was not technically authorized to approve payment for compensatory time."). Here, the evidence does not conclusively indicate the City's employees gave information that contradicted a statute or ordinance. Nor does the evidence conclusively indicate the employees acted outside their authority when they explained Retirees' benefits.

Retirees provided a scintilla of evidence that they reasonably relied upon the representations and promises of the City's human resource employees' explanations of the health insurance benefits to their detriment. Retirees presented evidence the City's human resource employees repeatedly told them that retiree health insurance would continue to be free

throughout retirement, specifically during discussions on how to explain the City's obligations to new recruits. The City provided employees with newsletters stating free insurance would continue upon retirement. The City Manager indicated that human resource employees were authorized to inform Retirees about their insurance benefits, and the City's ordinances support this testimony.[6]

Retirees also testified that several supervisors informed them they would receive free health insurance for life during their individual merit interviews and evaluations, which were incidental to the supervision of their employment. Therefore, the employment review context during which the representations were made provides a scintilla of evidence to suggest the representations and promises were within the supervisors' authority and reasonably relied upon.

Therefore, instead of holding Retirees were charged with knowledge of the extent to which the City's employees were incorrect, it is a question of fact as to whether these explanations were authorized and reasonably relied upon. As a result, the trial court erred in granting summary judgment on Retirees' estoppel claims.

## CONCLUSION

Based on the foregoing, we find the trial court properly granted summary judgment against Retirees on their contract

6. *See* City of Columbia Ordinance § 2–114("(a) Duties. The city manager shall be the chief executive officer of the city and head of the administrative branch of city government. The city manager shall perform and exercise the duties and responsibilities prescribed by law for this office and such other duties and responsibilities as prescribed by the City Council. (b) Assistants. The city manager may employ assistants to exercise such supervisory responsibilities over departments as the city manager may delegate."); City of Columbia Ordinance § 2–151("(a) The following departments of the city are created: ... Human resources; ... Fire; ... (b) The head of each department shall be a director, who shall be an officer of the city and shall have supervision and control of his department, subject to the city manager. The city manager may serve as director of one or more departments or divisions within any department."); City of Columbia Ordinance § 2–125 ("The director of human resources, subject to the city manager, shall have administrative supervision over the department of human resources and shall be responsible for those activities relating to employment, employee relations, and training and shall perform such additional duties as may be assigned by the city manager.").

claims. We also find the trial court properly granted summary judgment against Retirees on all of their estoppel claims to the extent those claims are based upon the employee handbook and benefits booklet. However, we find the trial court erred in granting summary judgment against Retirees on their estoppel claims based upon representations made by their supervisors and the City's human resource personnel.

Accordingly, the circuit court's rulings are

**AFFIRMED IN PART and REVERSED IN PART.**

THOMAS and LOCKEMY, JJ., concur.